STATE FARM FIRE & CASUALTY INSURANCE COMPANY, Plaintiff and Counterdefendant-Appellant, v. ANTHONY S. MICELI *et al.*, Defendants and Counterplaintiffs-Appellees (Dorothy Newton *et al.*, Defendants and Counterplaintiffs-Appellants).

First District (2nd Division)   No. 86—3431

Opinion filed December 15, 1987.

Bixby, Lechner, Yamaguchi & Potratz, P.C., of Chicago (Roger A. Bixby, of counsel), for appellant.

William J. Sneckenberg & Associates, Ltd., and Donald V. Young, both of Chicago (William J. Sneckenberg, Donald V. Young, and Benjamin E. Alba, of counsel), for appellees.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

State Farm Fire & Casualty Insurance Company (State Farm) brought this declaratory action, seeking a finding that it had no liability to Anthony and Marion Miceli for vandalism and theft claims made under a State Farm homeowner's insurance policy. The Micelis counterclaimed, alleging breach of contract. At trial, the jury returned a verdict in favor of Mr. and Mrs. Miceli and their daughters, Mary Ann and Dorothy. In answers to special interrogatories the jury found that the Micelis' son, Tony, had committed the vandalism and concealed material facts from State Farm. Upon post-trial motions the trial court overturned the findings against Tony, but entered judgment for State Farm and against all three of the children because they had failed to comply with State Farm's requests to appear for examina-

tions under oath. The trial court also awarded Mr. and Mrs. Miceli attorney fees and costs.

State Farm appeals from the jury verdict in favor of Mr. and Mrs. Miceli and from the court's granting of fees and costs; the Miceli children appeal from the judgment in favor of State Farm and against them. The issues raised on appeal include: (1) whether the trial court properly vacated the special findings against Tony Miceli; (2) whether the finding that an insured intentionally concealed or misrepresented a material fact bars the claims of the other insureds under the policy; (3) whether the damages awarded by the jury were proper; (4) whether the trial court erred in entering judgment against the Miceli children for their failure to submit to State Farm's demands that they be examined under oath; and (5) whether the trial court erred in awarding attorney fees and costs, pursuant to section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 767).

Mr. and Mrs. Miceli lived in their home in Niles, Illinois, since it was built in 1966. On July 22, 1983, the date on which the house was vandalized, the Micelis' three adult children, Tony, Mary Ann and Dorothy, lived with their parents, along with Dorothy's two children. Each July, the parents customarily vacationed in Acapulco, to which, in July 1983, Dorothy and her children accompanied them. Before leaving, Mr. and Mrs. Miceli arranged for teenager Scott Boryk to house-sit; Tony and Mary Ann also remained home during their parents' vacation.

On July 22, 1983, Boryk went to dinner with Mary Ann, her boyfriend and his family, leaving the Miceli home about 6:30 p.m. Tony remained home with a friend until approximately 8 p.m., when they went to a nearby restaurant. When Tony returned home at approximately 9 p.m., he discovered the vandalism. Paint had been spilled in a number of rooms in the house, appliances in the kitchen were damaged, and certain pieces of jewelry and stereo equipment were stolen. Tony called the police immediately. The next day he called his parents, but in order not to incur an increased airline fare, they did not return until July 26, 1983.

At the time of the incident the Micelis owned the State Farm homeowner's insurance policy which forms the subject matter of this suit. The policy was issued to Mr. and Mrs. Miceli, and it also covered the property of relatives who might be living with them. State Farm was notified of the loss, and within a week one of its representatives inspected the house and interviewed the Micelis.

During its investigation State Farm learned of a Niles police department report indicating that Randy Marsh, Tony's partner in a

jewelry business and a known burglar, predicted that the Miceli home would soon be vandalized for purposes of an insurance scam. State Farm sent a reservation of rights letter, informing the Micelis that the cause of the loss was under investigation. In turn, the Micelis submitted the proof of loss required by the policy. Examinations under oath were taken by State Farm of Mr. and Mrs. Miceli; however, the Miceli children declined to present themselves for such questioning, informing State Farm that they had been advised by their attorney that they were under no contractual obligation to do so. State Farm then filed this suit for declaratory judgment, claiming that it had no liability for vandalism or theft claims, because one of the Micelis had committed those acts. The Micelis counterclaimed, alleging that State Farm had breached its policy by failing to honor their claims and had acted vexatiously in handling such claims.

Prior to trial the court granted defendants' motion *in limine* to prohibit police officers from mentioning Tony Miceli or his family in their testimony about Marsh. The judge also ruled that the police officers could not testify as to the substance of any conversations with Marsh, as such testimony would be hearsay.

At trial, over defendants' objections, the court allowed State Farm to present testimony regarding Marsh's admonitions regarding the Miceli home. Arlington Heights police officer Richard Stachnik testified that Marsh, in an attempt to cooperate with police in order to reduce his sentence for a burglary conviction, had told him of a planned act of vandalism which was to occur in Niles in the forthcoming weeks. Stachnik related that he passed this information on to the Niles police department. In accordance with the trial court's ruling on defendants' motion *in limine*, Stachnik was not permitted to testify about Marsh's statement that Tony Miceli would vandalize his home for purposes of an insurance scam so that the family could redecorate.

Niles police detective Gerald Sheehan testified that on July 20, 1983, he drove around town with Randy Marsh while Marsh pointed out the houses he had burglarized. He further testified, in violation of the judge's ruling on the motion *in limine*, as follows:

"Q. What, if anything, did you do with respect to the Miceli house after you got done driving around on July 20, 1983?

A. Based on information that we had gotten from Randy Marsh, I advised Lt. Giovannelli what Tony Miceli—(Objections).

THE COURT: The objection to that is sustained, and that is stricken, and the jury is instructed to disregard it."

Niles police Lt. Giovannelli testified that Detective Sheehan ad-

vised him that there was a probability a burglary would soon occur at the Miceli residence. Lt. Giovannelli attempted to contact the Micelis' insurer.

"Q. What, if anything, happened when you telephoned that number?

A. I spoke to an individual—and I am sorry, I just can't recall what the name was or who this individual might be—and I initiated a—some dialogue with this individual about the—

(Objection, based on foundation.)

THE COURT: The objection is overruled.

BY THE WITNESS: A. I discussed with this individual an impending burglary and insurance scam.

(Objection.)"

The trial court overruled this objection and let stand Lt. Giovannelli's testimony concerning "an impending burglary and insurance. scam." The defense moved for a mistrial after Detective Sheehan testified and again after Lt. Giovannelli testified. Both motions were denied.

The jury returned a verdict in favor of Mr. and Mrs. Miceli for personal property losses in the amount of $70,894.66, and in favor of Mary Ann and Dorothy for property losses of $2,779.72 and $1,383 respectively. With regard to Tony Miceli, the jury answered the following special interrogatories affirmatively:

"Did Tony Miceli intentionally conceal or misrepresent any material fact?

Did Tony Miceli or someone under his direction and control cause the vandalism/theft of July 22, 1983?"

In post-trial motions State Farm challenged the verdict in favor of Mr. and Mrs. Miceli, Mary Ann Miceli and Dorothy Newton and alternatively sought remittitur on the jury verdict. Tony Miceli moved to vacate the jury's answers to special interrogatories returned against him. The trial court denied State Farm's motion and granted Tony's, holding that both answers were against the manifest weight of the evidence. The trial judge then entered judgment in favor of State Farm and against Tony, Mary Ann and Dorothy because of their failure to submit to examinations under oath. He also awarded Mr. and Mrs. Miceli attorney fees and costs, pursuant to section 155 (Ill. Rev. Stat. 1983, ch. 73, par. 767).

OPINION

■ State Farm first argues that the trial court erred in vacating the jury's answers to the special interrogatories regarding Tony Miceli. An answer to a special interrogatory should not be vacated un-

less it is contrary to the manifest weight of the evidence or conflicts with a general verdict. (*Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 249, 476 N.E.2d 427; *Kirby v. Swedberg* (1969), 117 Ill. App. 2d 217, 221, 253 N.E.2d 699.) Here, the trial judge vacated the special findings because they were against the manifest weight of the evidence.

State Farm argues that there was "substantial circumstantial evidence" that Tony vandalized his home. It stresses the one-hour period in which the vandalism and theft occurred; the fact that the house was unoccupied during only that one hour and that Tony was the last person to leave the house for that brief period and the first person to return and discover the damage; the fact that the damage was selective, and that items such as hanging plants, glass and tableware, chandeliers and paintings were untouched; the fact that there was an absence of significant damage in Dorothy's and Mary Ann's rooms; the fact of the pattern of damage to clothes in the master bedroom; and the fact of the absence of paint in footprints outside the house.

Tony Miceli argues that the findings against him were the result of hearsay admitted through the testimony of Officer Sheehan and Lt. Giovannelli and the trial court's decision to allow State Farm to argue that he had concealed material facts by refusing to appear for an examination under oath. He further argues that State Farm failed to establish his motive for vandalizing his home.

■ The jury's verdict against Tony Miceli was not unreasonable, arbitrary or unsupported by the evidence. (*Stringer v. McHugh* (1975), 31 Ill. App. 3d 720, 334 N.E.2d 311.) There was circumstantial evidence suggesting that Tony had vandalized his home. However, there is a good likelihood that the hearsay admitted through the testimony of Detective Sheehan and Lt. Giovannelli may have influenced the jury's special findings. Although we cannot say that the jury would have come to a different verdict had such evidence been excluded, we think it clear that the trial court committed error in concluding that the jury's findings were against the manifest weight of the evidence.

■ Even if the answers to the special interrogatories were properly vacated, the trial court erred in refusing to order a new trial. "If the answer to the special interrogatory is contrary to the manifest weight of the evidence, then a new trial should be ordered." (*Kirby v. Swedberg* (1969), 117 Ill. App. 2d 217, 221, 334 N.E.2d 311.) Accordingly, this part of the case is remanded to the trial court for a new trial for a determination of Tony Miceli's role in the vandalism and theft of his home.

State Farm also argues that Mr. and Mrs. Miceli are barred from

recovering under the policy because of the findings against Tony Miceli. Although we remand the case against Tony to the trial court for a new trial, the outcome thereof is not necessary to a determination of the rights of Mr. and Mrs. Miceli under their insurance policy.

State Farm's homeowner's insurance policy contains the following provisions:

> "Throughout this policy 'you' and 'your' refer to the 'named insured' shown in the Declarations and the spouse if a resident of the same household ***.
>
> * * *
>
> '[I]nsured' means you and the following residents of your household: (a) your relatives.
>
> * * *
>
> Concealment of Fraud. This entire policy shall be void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to the insurance."

Mr. and Mrs. Miceli argue that they are innocent of any wrongdoing and their right to recover under the policy is separate from that of other insureds. This issue has been addressed in *Economy Fire & Casualty Co. v. Warren* (1979), 71 Ill. App. 3d 625, 390 N.E.2d 361, and more recently in *West Bend Mutual Insurance Co. v. Salemi* (1987), 158 Ill. App. 3d 241, 511 N.E.2d 785. In *Economy*, after a claim had been paid by the insurer, a wife admitted setting the fire which caused the loss insured by the plaintiff company. The insurer sought to recover its payment to the husband and wife, and the husband argued that he was innocent of any wrongdoing and therefore entitled to half the proceeds under the insurance policy. The court allowed the innocent insured to recover, saying:

> "We do not think the reasonable person in the position of William Warren would have supposed that the wrongdoing of his co-insured would be imputed to him. If the plaintiff intended such a result, it should have made the terms of the policy more express in this regard." (*Economy Fire,* 71 Ill. App. 3d at 629.)

The court did not cite the insurance provision it was interpreting; however, provisions similar to the State Farm concealment and fraud provision have been interpreted as meaning that only the insured responsible for the loss is barred from recovering under the policy. (*West Bend Mutual Insurance Co. v. Salemi* (1987), 158 Ill. App. 3d 241, 511 N.E.2d 785.) In that case, plaintiff insurer denied the claim of Salemi, the seller in a real estate contract named as an "also insured" under the buyer's insurance policy. The insurer argued that the alleged wrongdoing of the buyer prevented the seller from recovering,

because of the following insurance policy provision:

> "This policy is void if any insured has intentionally concealed or misrepresented any material fact or circumstances relating to this insurance."

The trial court found that this provision was ambiguous and that a reasonable person would not understand that the wrongdoing of a coinsured would prevent recovery under the policy.

> "The clause itself states neither that the policy will be void as to all insureds nor that it will be void only as to the guilty insured in the event of some improper behavior. \*\*\* In the absence of a clear statement that the policy will be void as to all insureds, we find *Economy* to be controlling on this issue." *West Bend*, 158 Ill. App. 3d at 248-49.

■ *Economy* also controls in this case. State Farm argues that its insurance policy is clear that fraud by any insured voids the policy as to all insureds. We disagree. The clause at issue is almost identical to that construed in *West Bend*, and, as in that case, there is no clear statement here that the policy would be void as to all insureds if one insured were to engage in concealment or misrepresentation. It is as unlikely here as it was in *Economy* that a reasonable person would agree to an insurance policy which made recovery under the policy contingent upon the actions of another. Mr. and Mrs. Miceli purchased insurance from State Farm to protect their property from loss. A standard clause in the State Farm insurance policy extended coverage to the Micelis' adult children. It is reasonable for the Micelis to have assumed that their rights and obligations were not dependent upon those of their children.

■ State Farm next argues that the trial court improperly instructed the jury as to damages payable under the policy. The homeowner's policy at issue here provides for replacement cost coverage on personal property if replacement is made within one year of the loss.

The court instructed the jury as follows:

> "If you decide for one or more of the defendants on the question of liability, you must fix the amount of money which would reasonably and fairly compensate for the following element of damage proved by the evidence to have resulted from the vandalism or theft occurring on the premises of the defendant. The following personal property will be covered on an actual cash value basis \*\*\*.
>
> All other personal property and domestic appliances will be settled without deduction for depreciation subject to the limit

that State Farm will not pay for more than the lesser of:
1. Replacement cost at the time of loss;
2. Full cost to repair."

The court refused to include the following additional statement:

"[I]f repair or replacement is made within one year after loss *** ".

The Micelis respond that by denying liability and not providing any recovery State Farm prevented them from complying with the policy provisions. (*Zaitchick v. American Motorists Insurance Co.* (S.D.N.Y. 1982), 554 F. Supp. 209, *aff'd without opinion* (2nd Cir. 1983), 742 F.2d 1441, *cert. denied* (1983), 464 U.S. 851, 78 L. Ed. 2d 148, 104 S. Ct. 162.) Illinois courts do not appear to have addressed this specific issue, but in actions involving other types of contracts they have held that a party may not rely on a condition precedent when by its own conduct it has made compliance with that condition impossible. (*Barrows v. Maco, Inc.* (1981), 94 Ill. App. 3d 959, 419 N.E.2d 634; *Yale Development Co. v. Oak Park Trust & Savings Bank* (1975), 26 Ill. App. 3d 1015, 325 N.E.2d 418.) We perceive no reason for not applying that salutary rule to actions relating to contracts of insurance.

■ In addition, State Farm argues that the jury's verdict of $70,894.66 for Mr. and Mrs. Miceli was improper, as they claimed personal property losses of only $57,089.58 in their proof of loss filed with State Farm. State Farm also argues that the trial court should have reduced the jury verdict to $57,089.58, claiming that the jury verdict was a compromise verdict based on a wrong dollar figure.

The Micelis respond that much of their personal property was unique and difficult to value, and that after hearing testimony and reviewing photos of the Micelis' property the jury was entitled to reach its own valuation of the property.

The amount of a verdict is largely within the discretion of the jury. (*Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 452, 158 N.E.2d 63, *appeal dismissed and cert. denied* (1959), 361 U.S. 127, 4 L. Ed. 2d 180, 80 S. Ct. 256.) The amount of the verdict is not so large as to indicate passion or prejudice or so outrageous as to shock judicial consciousness. (*Hedrich v. Borden Co.* (1968), 100 Ill. App. 2d 237, 251, 241 N.E.2d 546.) Here, the jury had to value the Micelis' lost and damaged property, which included antiques, statuary, jewelry and clothing. Given the nature of these items, the jury verdict was not excessive.

Tony, Mary Ann and Dorothy appeal from the granting of judgment in favor of State Farm and against them for their refusal to

submit to examinations under oath. The State Farm homeowner's policy contains the following provisions:

"Your duties after loss. In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

\* \* \*

d. As often as we reasonably require:

\* \* \*

(3) submit to examinations under oath and subscribe same."

As noted above, the policy defines "you" and "your" as referring to named insureds. Mr. and Mrs. Miceli are the only named insureds under their policy.

■■ ■ A court must follow the plain meaning of the words of a contract. (*Rock Island Bank v. Time Insurance Co.* (1978), 57 Ill. App. 3d 220, 372 N.E.2d 998.) Here, the contract provision is clear. Mr. and Mrs. Miceli were under an obligation to submit to examinations under oath, and they did so. Their children were under no such obligation and cannot be prevented from recovering under the policy for refusing State Farm's demands that they be likewise interrogated. The trial court's ruling on this issue is therefore reversed.

■■ Finally, Mr. and Mrs. Miceli moved the court for attorney fees and costs pursuant to section 155 (Ill. Rev. Stat. 1983, ch. 73, par. 767). That statute provides:

"In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees [and] other costs \* \* \*."

In support of their motion the Micelis assert that State Farm failed to make a complete investigation of the incident before denying payment; that it did not interview a number of people, including Scott Boryk; that it did not tell the Micelis about Marsh's statements so they could rebut his charges; and that although the State Farm claims adjuster who came to their home testified that they cooperated, another State Farm representative, who never met the family or saw their home, recommended that the Micelis' claim be denied. The trial court awarded the Micelis' attorney fees of $17,395 and costs of $1,950.83.

As insurer's assertion of a legitimate policy defense, supported by case authority, cannot be considered vexatious and unreasonable.

(*Cummings Foods, Inc. v. Great Central Insurance Co.* (1982), 108 Ill. App. 3d 250, 439 N.E.2d 37.) State Farm had information suggesting an insured was responsible for the loss, and there are jurisdictions which do not allow an innocent insurer to recover under such circumstances. (*Klemens v. Badger Mutual Insurance Co.* (1959), 8 Wis. 2d 565, 99 N.W.2d 865.) State Farm asserted a plausible, although unsuccessful, defense to the Micelis' claims. Additionally, although State Farm's argument that the Miceli children concealed material facts by failing to submit to examinations under oath, and thus relieved State Farm of its obligations under its policy, is incorrect, it is not unreasonable and vexatious.

■■■ The determination of whether to award fees and costs is a question of fact and is left to the discretion of the trial judge. In this case, since the facts do not support such an award to the Micelis, the trial court abused its discretion and, accordingly, its ruling on fees and costs is reversed.

For the above-stated reasons, the case against Tony Miceli is remanded for a new trial, the judgment against Mary Ann and Dorothy is reversed and the jury verdict in their favor is reinstated, and the verdict in favor of Mr. and Mrs. Miceli is affirmed, but the award of attorney fees and costs is reversed.

Affirmed in part, reversed in part, and remanded in part.

STAMOS and HARTMAN, JJ., concur.