FIRST DIVISION 

MARCH 11, 2002 

No. 1-99-4494

THE ATCHISON, TOPEKA and SANTA FE

RAILWAY COMPANY,

Plaintiff-Appellant,

v.

ST. PAUL SURPLUS LINES INSURANCE

COMPANY, et al.,

Defendants-Appellees.

)))))))))

)

)

Appeal from the

Circuit Court of

Cook County.

No. 96 CH 12608

Honorable

Robert V. Boharic

Judge Presiding.

JUSTICE TULLY delivered the opinion of the court:

This appeal arises from a declaratory judgment action brought by The Burlington Northern Santa Fe Railway Company, successor in interest to The Atchison, Topeka and Santa Fe Railway Company (Santa Fe), to determine whether defendant St. Paul Surplus Lines Insurance Company (St. Paul) has an obligation to defend and indemnify Santa Fe in four underlying personal injury lawsuits against Santa Fe.  The circuit court granted summary judgment in favor of St. Paul finding that, based on the insurance policy's employer's liability exclusion, St. Paul had no duty to defend or indemnify Santa Fe for the underlying lawsuits.

Background

On September 1, 1990, Santa Fe entered into a written five year agreement with In-Terminal Services, Inc. (ITS), by which ITS was hired as an independent contractor at Santa Fe internodal terminals to load and unload the trailers and containers from the railroad flatcars and move the trailers around Santa Fe's terminal yards.  ITS is a division of Mi-Jack Products, Inc. (Mi-Jack). From approximately 1990 to 1995, ITS or Mi-Jack purchased commercial general liability insurance on an occurrence basis from St. Paul.  Santa Fe was added to the St. Paul policy pursuant to an endorsement providing that Additional Protected Persons include "All organizations where required by contract with the Named Insured ***".

The Insurance Policies

St. Paul issued general commercial liability policies with named insured Mi-Jack covering the period October 1, 1991 to October 1, 1994.  By endorsement, ITS was also a named insured on the policies.  The policies provide that Santa Fe is covered under the Additional Protected Persons endorsement.

The St. Paul policies contain the following provision:

"
Separation of protected persons.
  This agreement applies:

•to each protected person named in the Introduction as if that protected person was the only one named there; and

•separately to each other protected person.

However, the limits of coverage shown in the Coverage Summary are shared by all protected persons."

The policies also contain the following exclusion:

"
Employer's liability.
 We won't cover bodily injury to an employee arising out of and in the course of his or her employment by a protected person."

The St. Paul policies originally contained an exclusion endorsement of liability for injury "to any person while employed in work subject to the Federal Employers' Liability Act" (FELA), 45 U.S.C. § 51 
et
 
seq
. (1994).  This exclusion was deleted from the policy by endorsement, effective October 1, 1992.

The Underlying Claims

Santa Fe seeks coverage for four underlying lawsuits involving injuries that occurred during the effective period of the St. Paul policies.  The underlying complaints involve ITS employees working at Santa Fe's internodal facilities which include the following four actions:

Wellet v. Atchison, Topeka & Santa Fe, involved injuries allegedly sustained on February 19, 1993, by Douglas Wellet, a Santa Fe trainman, who allegedly jumped from a Santa Fe train when an ITS tractor cut in front of the train.  The complaint alleges that Wellet was employed by Santa Fe and the claim was brought pursuant to the Federal Employers' Liability Act, 45 U.S.C. §51 
et
 
seq
 (1994).

Maupin v. In-Terminal Services Corporation
 involved a Santa Fe switchman who was allegedly struck and killed by an ITS truck driver on May 22, 1993. The complaint alleges that Harry Maupin was employed by Santa Fe and the claim was brought pursuant to the Federal Employers' Liability Act, 45 U.S.C. §51 
et
 
seq
 (1994).

Fryer v.Atchison, Topeka & Santa Fe involved a driver who was killed when his truck was allegedly pushed into a train at Santa Fe's Hobart Yard on June 18, 1994.  The complaint alleges that Donald Fryer was an employee of both ITS and Santa Fe and was brought pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 
et
 
seq
 (1994).

Fresquez v.Atchison, Topeka & Santa Fe involved injuries to a second employee who was also injured in the June 18, 1994, accident at Hobart Yard involving Donald Fryer.  The complaint alleges that the plaintiff was employed by a third party.

Discussion

The issue presented by this appeal is whether the employee exclusion in the St. Paul policy precludes coverage for the underlying lawsuits where two of the underlying suits involved Santa Fe employees and the other two lawsuits involved employees of ITS.

Summary judgment is appropriate where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits reveal no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1998).  All evidence is construed in the light most favorable to the nonmoving party and strictly against the moving party.  
Letsos v. Century 21-New West Realty
, 285 Ill. App. 3d 1056, 1062, 675 N.E.2d 217 (1996).  The construction of an insurance policy is a question of law subject to 
de novo
 review.  
American States Insurance Co. v. Koloms
, 177 Ill. 2d 473, 479-80, 687 N.E.2d 72 (1997).  In construing the language of an insurance policy, a court must ascertain and give effect to the intention of the parties as expressed in their agreement.  
Koloms
, 177 Ill. 2d at 479, 687 N.E.2d 72.   To that end, terms utilized in the policy are accorded their plain and ordinary meaning 
(Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 108, 607 N.E.2d 1204 (1992)) unless specifically defined in the policy, in which case they will be given the meaning as defined in the policy.  In addition, a court must read the policy as a whole and consider the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract.  
Koloms
, 177 Ill. 2d at 479.   Provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer.  
Koloms
, 177 Ill. 2d at 479;  
National Union Fire Insurance Co. of Pittsburgh Pennsylvania v. Glenview Park District
, 158 Ill. 2d 116, 122, 632 N.E.2d 1039 (1994).  Moreover, all doubts and ambiguities in the policy language must be construed in favor of the insured.  
United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.
, 144 Ill. 2d 64, 74, 578 N.E.2d 926 (1991).

The Wellet and Maupin claims

Sante Fe contends that the Wellet and Maupin claims are covered under the St. Paul policy in light of the deletion of the FELA exclusion.  Sante Fe maintains that the deletion of the FELA exclusion was an explicit recognition of coverage for FELA claims.  Sante Fe further maintains that the employer's liability exclusion "must yield to the more specific policy endorsement which restored FELA coverage."  Santa Fe also contends that the policy is ambiguous as to whether FELA claims are covered.  Sante Fe asserts that the deletion of the FELA exclusion created a reasonable belief that FELA claims would be covered.  We disagree.

Here, the Wellet and Maupin complaints fall within the Employer's Liability exclusion in the St. Paul policy.  In both lawsuits the complaints allege that the plaintiff was an employee of Santa Fe at the time of the alleged accident.  The St. Paul policy contained an exclusionary provision which precluded coverage for bodily injury to an employee arising out of employment by a protected person.  This employer's liability exclusion was a part of the St. Paul policy while the FELA exclusion endorsement was in effect and after the FELA exclusion endorsement was deleted.  The employer's liability exclusion was never modified or removed from the policies.  Nothing in the record indicates that the deletion of the FELA exclusion was intended to create coverage of claims under FELA.  Moreover, nothing in the record indicates that either the addition of the FELA exclusion or the later deletion of that exclusion had any effect on the employer's liability exclusion.  In fact, both FELA endorsements contained the following language: "This endorsement summarizes the changes to your policy. All other terms of your policy not affected by these changes remain the same."

We cannot find that the deletion of the FELA exclusion endorsement was intended to provide coverage for claims under FELA irrespective of other exclusions in the policy.  Accordingly, we find that the employer's liability exclusion precludes coverage for the Wellet and Maupin lawsuits and we affirm the circuit court's granting summary judgment in favor of St. Paul on the underlying claims of Wellet and Maupin.

The Fryer and Fresquez claims

Santa Fe contends that the policy covers the Fryer and Fresquez claims and that coverage is not precluded by the employer's liability exclusion.  Santa Fe maintains that the "separation clause" in the St. Paul policy provides, in effect, that each "protected person" is treated as if each had a separate policy, except in regard to the limits of coverage.  Santa Fe asserts that the employee exclusionary clause is inapplicable to the lawsuits brought by Fryer and Fresquez because neither Fryer nor Fresquez was an employee of Santa Fe.

St. Paul contends, and the circuit court agreed, that the "separation clause" does not affect the employer liability exclusion.  St. Paul points to the language of the exclusion which states that coverage is precluded for injury arising out of the employment "by 
a
 protected person."  St. Paul maintains that this should be interpreted to preclude coverage for an employee of any of the "protected persons" under the St. Paul policy.  We disagree.

The cases relied upon by St. Paul stand for the contention that the use of the term "an insured" in an exclusionary clause means any insured, while use of the term "the insured" in an exclusionary clause is meant to refer to a specific insured.  However, none of these cases interpreted the exclusionary clause in light of a separation or severability clause.

In looking at the policy as a whole, we find that the separation clause contained in the St. Paul policy provides separate coverage for Santa Fe and for ITS as if each was separately insured with a distinct policy.  Our finding is supported by the Illinois Supreme Court in 
United States Fidelity & Guaranty Co. v. Globe Indemnity Co.
, 60 Ill. 2d 295, 327 N.E.2d 321 (1975) (
per
 
curiam
) (
USF&G
).  In 
USF&G
, the court found that a severability clause afforded coverage to an additional insured for injuries suffered by the employee of a named insured in a factual situation almost identical to the one here.  The case involved a personal injury suit against Sealy Mattress Co. by an employee of one of Sealy's subcontractors.  Sealy was named as an additional insured on a commercial liability policy purchased from Globe Insurance Company.  The Globe policy contained an employer liability exclusion which precluded coverage for bodily injury to "any employee of the insured arising out of *** his employment by the insured." 60 Ill.2d at 297.  The Globe policy also contained a severability clause which stated that the insurance "applies separately to each insured against whom claim is made or suit is brought***." 60 Ill.2d at 297.  Globe refused coverage based upon the employer's exclusion arguing that the underlying plaintiff was an employee of the named insured and thus, Sealy was not entitled to coverage.

The Illinois Supreme Court held that the severability clause afforded separate coverage to each insured as if each were separately insured with a distinct policy.  The court found that the employee exclusion, therefore, did not exclude protection for an additional insured against an injury suffered by an employee of another insured.  The court stated that the exclusionary clause applies only to the situation where an insured is sued by its own employee.  
USF&G
, 60 Ill. 2d at 299, 327 N.E.2d at 323.

The analysis of the court in 
USF&G
 considers the purpose of both the severability clause,  to afford coverage separately to each insured, and the employer liability exclusion, to preclude an employee from suing his employer for injuries suffered as a result of the employer's negligence.  In considering the intent of these provisions, we find any distinction between the use of the term "the insured" and "a protected person" to be insignificant.

Accordingly, the judgment of the circuit court is reversed as to the underlying claims of Fryer and Fresquez.  The cause is remanded to the circuit court of Cook County for further proceedings not inconsistent with the views expressed herein.

AFFIRMED in part, and REVERSED in part; cause remanded with directions.

COHEN, P.J., and McNULTY, J., concur.