2024 IL App (1st) 230224

FIRST DISTRICT,
FIRST DIVISION
April 22, 2024

No. 1-23-0224

| | | |
|---|---|---|
| CHRYSOULA DANA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 2020 CH 04775 |
| | ) | |
| GREAT NORTHERN INSURANCE | ) | Honorable |
| COMPANY, | ) | Eve M. Reilly, |
| | ) | Judge Presiding. |
| Defendant-Appellant, | | |

JUSTICE COGHLAN delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1　　Plaintiff Chrysoula Dana filed a complaint against defendant Great Northern Insurance Company (Great Northern) for declaratory judgment and breach of contract after Great Northern denied coverage for the loss of her engagement ring diamond. Plaintiff filed a claim under an insurance policy issued by Great Northern after learning that the real diamond in her engagement ring had been replaced with a synthetic diamond. Great Northern denied coverage under the misappropriation exclusion of the policy. Upon completing limited discovery, plaintiff and Great Northern filed cross-motions for summary judgment.

¶ 2　　The trial court granted Great Northern's motion for summary judgment on counts II and V, finding the misappropriation exclusion clearly excludes coverage "where one of the insureds took the ring and replaced the real diamond with an imitation diamond." However, the court also found that "[t]he innocent insured doctrine applies where the policy does not contain a clear

statement that the policy is void as to all insureds, in the event of wrongdoing by one of the insureds." The trial court held that Great Northern's policy did not contain such language but denied plaintiff's motion for summary judgment because whether plaintiff was an innocent insured was "a question of material fact." After the parties stipulated that plaintiff was "an innocent insured," the trial court ruled that plaintiff was entitled to coverage and entered judgment in the amount of $176,356.68 in favor of plaintiff.

¶ 3        On appeal, Great Northern asserts that the trial court "improperly engrafted an innocent insured exception on the policy's misappropriation exclusion." On cross-appeal, plaintiff argues that the trial court "disregarded the plain ordinary meaning of misappropriation" in construing the terms of the misappropriation clause. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4                                    BACKGROUND

¶ 5        On July 3, 2017, Great Northern issued a Chubb Masterpiece insurance policy for plaintiff's engagement ring, a white gold ring with one 3.57 carat pear-shaped diamond valued at $139,906. Plaintiff and her husband, George Dana, were both named insureds under the policy. Sometime in March 2018, George took plaintiff's ring after an argument. During a conversation recorded a few weeks later, George told plaintiff she would never see the ring again. On May 21, 2018, after filing a dissolution of marriage petition, plaintiff obtained an emergency order of protection against George. Among other things, George was ordered to return plaintiff's engagement ring. On June 1, 2018, a gemologist confirmed plaintiff's suspicion that the natural diamond in her ring had been replaced with a synthetic diamond.

¶ 6        On January 14, 2019, plaintiff initiated a claim for the loss of her diamond. Plaintiff told claim representative Travoy Bynum that she believed George had replaced her natural diamond with a synthetic stone because he had threatened to take the ring from her "a lot of times before."

Great Northern's investigation of plaintiff's claim included obtaining examinations under oath (EUO) from plaintiff and George.

¶ 7    In a letter dated February 20, 2023, plaintiff was advised that Great Northern had completed its investigation and "denies any liability" under the misappropriation exclusion of the policy. This exclusion stated, in relevant part: "We do not cover any loss caused by the taking or other misappropriation by or directed by a person named in the Coverage Summary, that person's spouse, a family member, or a person who lives with you." Great Northern explained:

"No coverage is afforded under the policy because our investigation has determined that the loss of the diamond contained in [the engagement ring] *** was caused by the taking or other misappropriation by or directed by a person named in the Coverage Summary, that person's spouse, or a family member."

¶ 8    Plaintiff requested clarification regarding the denial of her claim. Great Northern responded that plaintiff reported that George "substituted a synthetic diamond for the real diamond," but George indicated that the diamond "may have been substituted by a pawn shop" or by plaintiff's father in order to "frame" George. Great Northern reasoned that the only question of fact it needed to resolve was whether the pawn shop was responsible because "the other possibilities presented by the insureds were either not covered under the misappropriation exclusion or did not constitute a loss." Regardless of whether plaintiff or George was responsible for the loss, Great Northern concluded that neither of them were entitled to recover because they were both insured under the policy.

¶ 9    On June 30, 2020, plaintiff filed a complaint against Great Northern for declaratory judgment and breach of contract. She alleged, *inter alia*, that the misappropriation exclusion was "vague, ambiguous, and undefined" and she was entitled to coverage under the innocent insured doctrine. Both parties subsequently filed cross-motions for summary judgment.

¶ 10    On October 6, 2022, the trial court granted Great Northern's motion for summary judgment on counts II and V of the complaint, finding that "the misappropriation clause is clear and excludes coverage where one of the insureds took the ring and replaced the real diamond with an imitation diamond." Relying on *West Bend Mutual Insurance Co. v. Salemi*, 158 Ill. App. 3d 241 (1987), the trial court held that "[t]he innocent insured doctrine applies when the policy does not contain a clear statement that the policy is void as to all insureds, in the event of wrongdoing by one of the insureds." Because the plain language of the policy did not contain such a statement, the court concluded that the innocent insured doctrine would apply if plaintiff was an innocent insured, which constituted a material issue of disputed fact.

¶ 11    On January 18, 2023, before the case proceeded to trial, the parties stipulated that, "based on the evidence, a trier of fact would conclude that [plaintiff] did not participate in the substitution of the property that is subject to this action, and is therefore an innocent insured." The trial court subsequently entered judgment in favor of plaintiff and against Great Northern in the amount of $176,356.68.

¶ 12                                   ANALYSIS

¶ 13    Great Northern argues that the trial court "improperly engrafted an innocent insured exception on the policy's misappropriation exclusion." On cross-appeal, plaintiff challenges the trial court's finding that Great Northern properly denied coverage based on the misappropriation exclusion. Plaintiff argues that the court "disregarded the plain ordinary meaning of misappropriation" and based its ruling on a disputed fact (*i.e.*, that a coinsured was responsible for the swap).

¶ 14    "Summary judgment is appropriate where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits reveal no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Atchison, Topeka & Santa*

*Fe Ry. Co. v. St. Paul Surplus Lines Insurance Co.*, 328 Ill. App. 3d 711, 714 (2002) (citing 735 ILCS 5/2-1005(c) (West 1998)). "Where a case is decided through summary judgment, our standard of review is *de novo*." *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. Furthermore, "[t]he construction of an insurance policy is a question of law subject to *de novo* review." *Atchison*, 328 Ill. App. 3d at 714.

¶ 15                                    Misappropriation Exclusion

¶ 16          The trial court observed that, "regardless of what the plain ordinary meaning of misappropriation is, this policy explicitly states that the clause applies when there is a 'taking or other misappropriation' by an insured." Accordingly, the court found that the policy language clearly "excludes coverage *where one of the insureds took the ring* and replaced the real diamond with an imitation diamond." (Emphasis added.)

¶ 17          "In construing the language of an insurance policy, a court must ascertain and give effect to the intention of the parties as expressed in their agreement." *Id.* (citing *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997)). Reviewing courts must assume that every provision in an insurance policy was intended to serve a purpose and the policy "is to be construed as a whole, giving effect to every provision [citation], and taking into account the type of insurance provided, the nature of the risks involved, and the overall purpose of the contract." *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 371 (2007).

¶ 18          If the words used in the policy are clear and unambiguous, and not specifically defined in the policy, they must be given their "plain, ordinary, and popular meaning." *Id.*; *Atchison*, 328 Ill. App. 3d at 714. "[A]ll doubts and ambiguities in the policy language must be construed in favor of the insured." *Atchison*, 328 Ill. App. 3d at 715; see also *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74 (1991). A policy is not rendered ambiguous simply

because the parties disagree on its meaning, and courts "will not strain to find an ambiguity where none exists." *Rich*, 226 Ill. 2d at 372.

¶ 19        The words used in the misappropriation clause of this policy and, in particular, the phrase "loss caused by the taking or other misappropriation" are clear and unambiguous. Our supreme court has explained: "The word 'or' is disjunctive. As used in its ordinary sense, the word 'or' marks an alternative indicating the various parts of the sentence which it connects are to be taken separately. [Citation.] In other words, 'or' means 'or,' " and "therefore connotes two different alternatives." *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 145 (2006). Accordingly, the phrases prior to the "or" (by the taking) and following the "or" (other misappropriation) connote two different alternatives. See *Mosby v. Ingalls Memorial Hospital*, 2023 IL 129081, ¶ 37.

¶ 20        The term "misappropriation" is not defined in the present policy. Black's Law Dictionary defines "misappropriation" as "[t]he application of another's property or money dishonestly to one's own use." *Misappropriation*, Black's Law Dictionary (11th ed. 2019). The Merriam-Webster Online Dictionary defines "misappropriate" as "to appropriate wrongly (as by theft or embezzlement)." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/misappropriate (last visited Apr. 11, 2024) [https://perma.cc/5WA3-WCNV]. As a verb, "appropriate" is defined as "to take exclusive possession of" or "to take or make use of without authority or right." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/appropriate (last visited Apr. 11, 2024) [https://perma.cc/5WNK-V89C]. In this case, since one of the insureds took the ring *or* otherwise wrongly made use of the diamond, the misappropriation exclusion is applicable.

¶ 21        Plaintiff also argues that "Great Northern failed to investigate or explore the other third parties that may have replaced the natural diamond." We disagree. Great Northern denied coverage "[a]fter conducting an investigation, which included Plaintiff's statement that her husband

switched out the diamond and George's statement that [plaintiff] pawned the ring to support her gambling habit." The record reflects that Great Northern's investigation covered all of "the other possibilities presented by the insureds." Based on the findings of its investigation, Great Northern reasonably concluded that "the other possibilities presented by the insureds were either not covered under the misappropriation exclusion or did not constitute a loss."

¶ 22                                                Innocent Insured

¶ 23        Great Northern argues that, after finding that the misappropriation exclusion applied to the facts of the case, the trial court "improperly engrafted an innocent insured exception on the policy's misappropriation exclusion." Plaintiff contends that, without language in the policy specifically excluding application of the innocent insured doctrine, it should be applied because she was not involved in replacing the diamond. We find that the trial court did not err in applying the innocent insured doctrine and finding that plaintiff was entitled to recover on her claim.

¶ 24        "The common law innocent insured doctrine operates in cases where there are two or more insureds on a policy, and it allows an insured who is innocent of wrongdoing to recover despite the wrongdoing of other insureds." *Illinois State Bar Ass'n Mutual Insurance Co. v. Law Office of Tuzzolino & Terpinas*, 2015 IL 117096, ¶ 20. Such cases "usually involve the enforcement of policy exclusions, typically exclusions for intentional acts allegedly committed by an insured other than the one challenging the exclusion." *Id.* ¶ 24. That is because "the insured's innocence is relevant to whether an intentional act invokes an exclusion to coverage." *Id.* "[T]he innocence of an insured matters a great deal when another insured's wrongdoing triggers a policy exclusion, and a dispute arises over whether the insurer has a duty to defend the innocent insured under a policy that undisputedly was in effect." *Id.* ¶ 30.

¶ 25        The parties acknowledge that the "innocent insured" doctrine has typically been applied in cases involving arson or vandalism. *Id.* ¶ 20; see, *e.g.*, *Wasik v. Allstate Insurance Co.*, 351 Ill.

App. 3d 260 (2004) (plaintiff was entitled to recover losses after his stepson intentionally set fire to plaintiff's garage); *State Farm Fire & Casualty Insurance Co. v. Miceli*, 164 Ill. App. 3d 874 (1987) (plaintiffs were not precluded from recovering after their son vandalized property in the family's home); *Salemi*, 158 Ill. App. 3d 241 (seller of motel was allowed to collect on fire and casualty insurance policy after the buyer's son was suspected of arson); *Economy Fire & Casualty Co. v. Warren*, 71 Ill. App. 3d 625 (1979) (defendant, as an innocent coinsured, was entitled to collect on the fire insurance policy after wife started the fire that damaged their house before she died).

¶ 26     The appellate court's decision in *Wasik* exemplifies the typical application of the innocent insured doctrine. In *Wasik*, a fire destroyed the plaintiff's garage, and he filed a claim under his homeowner's insurance policy. *Wasik*, 351 Ill. App. 3d at 261. The " 'joint obligations' " clause in the policy stated, in relevant part: " 'The terms of this policy impose joint obligations on persons defined as an *insured person*. This means that the responsibilities, acts and failures to act of a person defined as an *insured person* will be binding upon another person defined as an *insured person*.' " (Emphases in original.) *Id.* at 264-65. The policy's exclusion section indicated the insurance company did not cover loss caused by " '[i]ntentional or criminal acts *** of any insured person.' " (Emphasis omitted.) *Id.* at 265. The defendant insurance company denied coverage because the plaintiff's stepson intentionally started the fire. *Id.* at 261. The plaintiff's complaint alleged that the defendant breached the policy by denying the claim, even though his stepson was an insured under the policy. *Id.* at 261, 264. The defendant filed a motion for summary judgment, which the trial court granted. *Id.* at 263. On appeal, the plaintiff argued that, as an innocent insured, he was entitled to recover under the policy despite the alleged wrongdoing of his stepson. *Id.* at 264.

¶ 27    After considering prior decisions construing the application of the innocent insured doctrine, including *Warren*, *Salemi*, and *Miceli*, the *Wasik* court determined that

"[a]lthough the clauses could be read as entirely prohibiting coverage for a loss caused by the act or failure to act of 'any' insured, they do not clearly state that the policy will be void or coverage will be excluded as to all insureds in the event of some improper behavior by 'any' insured." *Id.* at 266.

¶ 28    In *Warren*, the appellate court determined that the wrongdoing of a coinsured wife who committed arson could not be imputed to the innocent husband because the express terms of the policy did not so provide.[1] *Warren*, 71 Ill. App. 3d at 629. In *Salemi*, the reviewing court stated concisely: "If [the insurer] intended for both [insureds] to be barred [from recovery] in the event of wrongdoing by one, its intent should have been expressly and clearly stated in the terms of the policy." *Salemi*, 158 Ill. App. 3d at 249. Finally, in *Miceli*, the appellate court held that the policy language did not preclude a husband and wife from recovering after their son vandalized property in the family's home because it was reasonable for the husband and wife to have "assumed that their rights and obligations were not dependent upon those of their children." *Miceli*, 164 Ill. App. 3d at 881.

¶ 29    While *Wasik*, *Warren*, *Salemi*, and *Miceli* provide a brief overview of the application of the innocent insured doctrine, those cases dealt with property that was damaged or destroyed to the point that the property was lost. In this case, the natural diamond was taken and replaced with a synthetic diamond; it was not lost by damage or destruction. Nevertheless, the court's reasoning in *Wasik*, *Miceli*, *Salemi*, and *Warren* is equally applicable in the instant case.

---

[1]The *Warren* court did not cite actual language of the policy provision it was interpreting. See *Wasik*, 351 Ill. App. 3d at 265-66.

¶ 30    The provision of the policy under which Great Northern chose to deny coverage, the misappropriation exclusion, did not contain a clear statement that the policy was void as to *all* insureds in the event of wrongdoing. If Great Northern intended *both* coinsureds to be barred from recovery in the event of wrongdoing by either one, then it should have employed policy language that expressly and clearly stated its intent. See *Salemi*, 158 Ill. App. 3d at 249. Like the property owners in *Warren*, *Salemi*, *Miceli*, and *Wasik*, plaintiff was deprived of the use of her property through no fault of her own.

¶ 31    Great Northern asserts that, "[b]y engrafting an innocent insured exception to the misappropriation exclusion, the exclusion would never apply, as any taking of insured property by another insured would necessarily involve an innocent insured. The exclusion, with such an exception, would *never apply* and therefore would be rendered meaningless." (Emphasis added.). We disagree. For example, the misappropriation exclusion could apply in situations where none of the covered individuals are "innocent" in the misappropriation of the insured property.

¶ 32    In its briefs and at oral argument, Great Northern argued that plaintiff did not have a reasonable expectation of coverage based on the nature of her loss. We disagree. Since plaintiff had an insurance policy for her diamond, it was reasonable for her to expect coverage when she was deprived of the use of her diamond through no fault of her own. It is as unlikely here as it was in *Warren* and *Miceli* "that a reasonable person would agree to an insurance policy which made recovery under the policy contingent upon the actions of another." *Miceli*, 164 Ill. App. 3d at 881. It was also reasonable for plaintiff to have assumed that her "rights and obligations were not dependent" (*id.*) upon those of her husband, particularly where, as here, the express terms of the policy did not so provide. See *Warren*, 71 Ill. App. 3d at 628-29.

¶ 33     We find that the trial court did not err in holding that plaintiff was entitled to coverage based on the innocent insured doctrine. Accordingly, the trial court properly entered judgment in favor of plaintiff in the amount of $176,356.68.

¶ 34                                          CONCLUSION

¶ 35     For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 36     Affirmed.

*Dana v. Great Northern Insurance Co.*, **2024 IL App (1st) 230224**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020-CH-04775; the Hon. Eve M. Reilly, Judge, presiding. |
| **Attorneys for Appellant:** | James E. DeFranco and Matthew K. Suess, of Rynearson, Suess, Schnurbusch & Champion, LLC, of St. Louis, Missouri, for appellant. |
| **Attorneys for Appellee:** | Joseph A. Bosco and Costa Diamond, of LaRose & Bosco, Ltd., of Oak Park, for appellee. |