**CYPRUS PLATEAU MINING CORPORATION, a Delaware corporation, Plaintiff,**

v.

**COMMONWEALTH INSURANCE COMPANY, a corporation organized under the laws of Canada, Defendant.**

No. 2:96–CV–401J.

United States District Court, D. Utah, Central Division.

Aug. 25, 1997.

Kenneth W. Yeates, D. Matthew Moscon, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, UT, Mark S. Parris, Angela M. Luera, Heller, Ehrman, White & McAuliffe, Seattle, WA, for Plaintiff.

Craig R. Mariger, Barry G. Lawrence, Jones, Waldo, Holbrook & McDonough, Salt Lake City, UT, R. Jack Stephenson, Joanne Thomas Blackburn, Gary D. Swearingen, Garvey, Schubert & Barer, Seattle, WA, for Defendant.

## MEMORANDUM OPINION AND ORDER

JENKINS, Senior District Judge.

On April 14, 1997, the above-captioned action came before the Court on the defendant's Motion for Summary Judgment and the plaintiff's Motion for Partial Summary Judgment. Joanne Thomas Blackburn, Barry G. Lawrence, and Craig R. Mariger appeared on behalf of the defendant Commonwealth Insurance Company. D. Matthew Moscon, Mark Parris, and Kenneth W. Yeates appeared on behalf of the plaintiff Cyprus Plateau Mining Corporation. The Court having reviewed the pleadings and memoranda submitted by the parties, having heard oral argument from counsel, and after fully considering the same, and for reasons discussed more fully below, denies defendant's·Motion for Summary Judgment and grants plaintiff's Motion for Partial Summary Judgment.

### Background

Cyprus Plateau Mining Corporation ("Cyprus") contracted with J.S. Redpath Corporation ("Redpath"), a United States subsidiary of J.S. Redpath Ltd., a Canadian company, to excavate mine tunnels in Bear Canyon, Carbon County, Utah. Redpath, in return, agreed to name Cyprus as a named insured under its comprehensive general liability and umbrella liability insurance policies. Redpath, with the help of the Marsh & McLennan insurance agency, purchased policies from the Commonwealth Insurance Company ("Commonwealth") and caused Cyprus to be named as an additional insured. These policies ran from September 30, 1989, to September 30, 1990.

On April 18, 1990, Thayde Jones, a Redpath employee, was injured while working at the Bear Canyon site. Jones brought an action against Cyprus for damages relating to his injuries. Cyprus notified Commonwealth of this action and, as a named insured, sought coverage under the Redpath policies. Commonwealth denied all coverage. In November 1995, a jury verdict was returned in favor of Jones for $2 million. An appeal was taken and recently the Utah Supreme Court affirmed. *See Jones v. Cyprus Plateau Mining Corp.*, 944 P.2d 357 (Utah 1997).

On May 6, 1996, Cyprus commenced this action. Cyprus seeks a declaratory judgment on the respective rights and liabilities of the parties under the insurance policies issued by Commonwealth with respect to the claims brought by Jones, and damages flowing from Commonwealth's failure to defend and indemnify Cyprus with respect to the Jones claim.

### Discussion

▬ An insurance policy is a contract between the parties and is construed by em-

ploying the general rules of contract interpretation. *Alf v. State Farm Fire and Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993). Words and phrases used in an insurance policy are to be construed using their plain, ordinary, and generally prevailing meaning. See *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 859 (Utah 1988). An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *See id.* Where the language of the policy is clear and unambiguous the agreement should be enforced as written. *St. Paul Fire and Marine Ins. v. Commercial Union Assurance*, 606 P.2d 1206, 1208 (Utah 1980). If, however, after applying the rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter the insurer and in favor of the insured. *Alf,* 850 P.2d at 1274.

■ The general purpose of liability insurance is to afford the insured party some measure of protection from liability damage claims. Liability policies are therefore construed to achieve that purpose. *See LDS Hosp.*, 765 P.2d at 859. Thus, a provision which seeks to narrow an insurer's obligation will be strictly construed against the insurer. *U.S. Fidelity and Guar. Co. v. Sandt,* 854 P.2d 519, 523 (Utah 1993). If the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. *Id.*

■ It is equally well settled, however, that insurance companies have the right to limit coverage in any manner they desire, so long as the limits do not conflict with statutory prohibitions or public policy. *Farmers Ins. Exch. v. Call,* 712 P.2d 231, 233 (Utah 1985). Moreover, the rule of strict construction does not authorize the perversion of language for the purpose of creating an ambiguity where none exists. Nor does it allow the court to refine away the terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties. *See Alf,* 850 P.2d at 1275.

■ Whether an exclusion in an insurance policy is clear and unambiguous is a question of law that may be resolved by the

court in the context of a motion for summary judgment. *Quaker State Minit–Lube, Inc. v. Fireman's Fund Ins. Co.*, 868 F.Supp. 1278, 1287 (D.Utah 1994), *aff'd,* 52 F.3d 1522 (10th Cir.1995); *see also Grimes v. Swaim,* 971 F.2d 622, 623 (10th Cir.1992) ("The construction of an insurance policy is a matter of law."); *Alf,* 850 P.2d at 1274 (whether an ambiguity exists is a question of law).

### Analysis

■ The pending cross-motions turn on a single issue: whether the insurance policies purchased by Redpath from Commonwealth, to which Cyprus was added as an insured, obligated Commonwealth to defend and indemnify Cyprus against a personal injury claim brought against Cyprus by a Redpath employee who was injured while tunneling at a Cyprus mine. That determination, in turn, hinges on the interpretation of a provision in the insurance policies that reads as follows:

> This Policy does not cover Personal Injury including Bodily Injury to any employee of any Insured under this policy for which the Insured or his indemnitee may be held liable.

Commonwealth argues that the exclusion of any claim for personal injury by an employee of one insured, Redpath, against another insured, Cyprus, is what the words mean. Cyprus argues that a "fair and reasonable" reading of the exclusion is that it applies only to claims against a named insured by its own employees. Thus, because there are two reasonable and inconsistent interpretations, Cyprus asserts that Utah law requires that the exclusion be interpreted in favor of coverage and against the insurer. *See Sandt,* 854 P.2d at 523; *see also Alf,* 850 P.2d at 1274–75 (policy is ambiguous if the terms may be understood to have two or more plausible meanings). For its part, Commonwealth agrees that Utah law provides that if the exclusion is ambiguous the Court should interpret the policy in favor of Cyprus. (Mem. in Supp. of Def's. Mot. for Summ. Judgment, at 7.)

■ Although Utah courts have not yet spoken directly on this question, the parties have provided the Court with a number of authorities from other state and federal

courts that have addressed this and similar issues.[1] Cyprus relies heavily on *Transport Indem. Co. v. Wyatt,* 417 So.2d 568, 571 (Ala.1982), an Alabama Supreme Court decision that held that an exclusion from coverage of "any OCCURRENCE which caused BODILY INJURY to *any* employee of *any* INSURED arising out of or in the course of his employment by *any* INSURED" was ambiguous because the language "any insured" could be interpreted to mean any one of the insureds or could apply collectively to the whole group of insureds. (Emphasis added.) The court then construed the exclusion in favor of coverage and against the insurer. *Id.*

Similarly, in *Pacific Indem. Co. v. Transport Indem. Co.,* 81 Cal.App.3d 649, 146 Cal. Rptr. 648, 651 (1978), the California interme-diate appellate court held that a similarly worded exclusion that purported to exclude from coverage any "liability for bodily injury, . . . to *any* employee of *any* Insured" was ambiguous. (Emphasis added.) The court stated that the phrase was susceptible to two interpretations: (1) it could mean any employee of any insured who is seeking protection under the policy; or (2) it could mean any employee of any insured regardless of whether that insured is seeking the protections of the policy. Applying the general rule that ambiguous exclusions will be construed against the insurer, the court interpreted the exclusion in favor of coverage. *Id.; see also United States Steel Corp. v. Transport Indem. Co.,* 241 Cal.App.2d 461, 50 Cal.Rptr. 576, 584–85 (1966) (finding that the language excluding from coverage "any

---

1. Although the parties have not raised the issue, in light of the dearth of Utah authority on this question, the Court has independently examined whether certification to the Utah Supreme Court was appropriate. The Tenth Circuit has determined that certification is appropriate where it appears that the question to be certified may be determinative of the action now pending before the federal court and where there is no controlling authority on the question from the state's highest court or its intermediate appellate court. *Swink v. Sunwest Bank, (In re Fingado),* 955 F.2d 31, 33 (10th Cir.1992). While the decision to certify is discretionary and certification should be used with restraint, *Ormsbee Dev. Co. v. Grace,* 668 F.2d 1140, 1149 (10th Cir.1982), it is "particularly appropriate" where the legal question is novel and the applicable state law unsettled, *Allstate Ins. Co. v. Brown,* 920 F.2d 664, 667 (10th Cir.1990), or where the question has not been addressed by the state courts with "sufficient clarity." *Delaney v. Cade,* 986 F.2d 387, 391 (10th Cir.1993).

In the context of interpreting an exclusion provision in an insurance policy—a provision that had not yet been considered by the Utah Supreme Court—the Tenth Circuit stated that the federal court's responsibility is to give the clause the interpretation it believes the Utah court would. *Anaconda Minerals Co. v. Stoller Chem. Co.,* 990 F.2d 1175, 1177 (10th Cir.1993) (citing *Hartford Accident & Indem. Co. v. U.S. Fidelity and Guar. Co.,* 962 F.2d 1484, 1487 (10th Cir. 1992)). In declining to certify the question, the court noted that it "may consider all available resources, including [that state's] appellate court decisions, other state and federal decisions, and the general trend of authority, to determine how the [state] Supreme court would construe the law." *Id.,* at 1177 (quoting *Hartford Accident,* 962 F.2d at 1487–88 n. 3. (further citations omitted)).

Important issues of federalism surround a decision on certification. The United States Supreme Court has noted that certification "in the long run save[s] time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974). Recently, Judge Calabresi noted that when a federal court fails to certify, the federal court has effectively prevented a state court from deciding unsettled issues of state law, thereby violating fundamental principles of federalism and comity. *McCarthy v. Olin Corp.,* 119 F.3d 148, 157–58 (2d Cir.1997) (Calabresi, J., dissenting). Moreover, as Judge Calabresi stated, "certification is an alterative to prognostication—an alternative that respects the right of state courts to define their own substantive law, deters forum shopping, and ensures that litigants . . . will have their state-law created rights determined by the only judges who can give definitive answers as to those rights." *Id.,* at 159 (citation and internal quotation marks omitted). While Judge Calabresi recognizes that certification should be used with restraint and discretion, he asserts that it is appropriate in virtually any case in which a significant and dispositive issue of state law is in genuine doubt and where certification has been requested by the party that did not invoke federal court jurisdiction. *Id.,* at 161.

While the Court finds Judge Calabresi's arguments interesting, it is constrained by the dictates of the Tenth Circuit. Thus, rather than certify, the Court, being informed by other state and federal decisions and the general trend of authority, has endeavored to interpret the exclusion in a manner it believes the Utah court would. *Hartford Accident,* 962 F.2d at 1487–88 n. 3. This decision is further buttressed by the fact that neither party sought certification.

liability ... for bodily injury ... of *Any* employee of any Insured" was "obviously ambiguous" and holding that the exclusion did not apply when an employee of the named insured sought damages from another additional insured) (emphasis added).

Commonwealth, on the other hand, points to several decisions, including a Utah Supreme Court decision, which have held that the phrase "any insured" is unambiguous. *See Allen v. Prudential Property and Cas. Ins. Co.*, 839 P.2d 798, 807 (Utah 1992); *see also Spezialetti v. Pacific Employers Ins. Co.*, 759 F.2d 1139, 1142 (3d Cir.1985) (finding no ambiguity and determining that the phrase "any insured" means anyone covered by the policy); *Michael Carbone, Inc. v. General Accident Ins. Co.*, 937 F.Supp. 413, 422 (E.D.Pa.1996) (noting that "the bulk of the courts which have addressed this issue" have held that an exclusion worded "any insured" is unambiguous).

■ A look at the plain and ordinary meaning of the word "any" also appears to support Commonwealth's position. As the dictionary definitions of "any" make clear, Cyprus's interpretation that the term "any" should somehow be limited to employees of a specific insured is contrary to the ordinary understanding of the term.[2] Dictionaries, while not infallible (or even consistent), are general guides to common usage. Ordinarily, a dictionary is a valuable resource for interpretation.[3]

■ Unlike dictionary definitions, which by their nature define words in the abstract,[4] the Court's role in interpreting the

---

**2.** *Webster's Third New International Dictionary* 97 (1971) defines "any" as:

> one indifferently out of more than two: one or some indiscriminately of whatever kind: **a:** one or another; that or the other. **b:** one no matter what one: Every—used as a function word esp. in assertions and denials to indicate one that is selected without restriction or limitation of choice. **c:** one or some of whatever kind or sort.

Similarly, the *Random House College Dictionary* 61 (rev.ed.1980), defines "any" as "one, a, an, or some; one or more without specification or identification." Recently, in interpreting the use of the word "any" in 18 U.S.C. § 924(c), the United States Supreme Court stated that "[r]ead naturally, the word 'any' had an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, — U.S. —, —, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997) (quoting *Webster's Third New International Dictionary*). The Court then read the term *"any* other term of imprisonment" to include *all* terms of imprisonment, including those imposed by state courts. *Id.*, (emphasis added).

**3.** In fact, as indicated in note 2, *supra*, the United States Supreme Court often turns to the dictionary for assistance. *See Auer v. Robbins*, — U.S. —, —, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997) (definition of "subject to"); *Walters v. Metropolitan Educ. Enter., Inc.*, — U.S. —, —, 117 S.Ct. 660, 664, 136 L.Ed.2d 644 (1997) (definition of "have"); *O'Gilvie v. United States*, — U.S. —, —, 117 S.Ct. 452, 455, 136 L.Ed.2d 454 (1996) (definition of "on account of"); *44 Liquormart, Inc. v. Rhode Island*, — U.S. —, —, 116 S.Ct. 1495, 1502, 134 L.Ed.2d 711 (1996) (definition of "temperance"); *Rutledge v. United States*, — U.S. —, —, 116 S.Ct. 1241, 1247, 134 L.Ed.2d 419 (1996) (defini-

tion of "concert"); *NLRB v. Town & Country Elec., Inc.*, — U.S. —, —, 116 S.Ct. 450, 453, 133 L.Ed.2d 371 (1995) (definition of "employee"); *Rosenberger v. Rector and Visitors of the Univ. of Va.*, 515 U.S. 819, 835–36, 115 S.Ct. 2510, 2520, 132 L.Ed.2d 700 (1995) (definitions of "promote" and "manifest"); *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 695, 115 S.Ct. 2407, 2412, 132 L.Ed.2d 597 (1995) (definition of "harm"); *Hubbard v. United States*, 514 U.S. 695, 700, 115 S.Ct. 1754, 1757–58, 131 L.Ed.2d 779 (1995) (definition of "shows"); *United States v. Lopez*, 514 U.S. 549, 586, 115 S.Ct. 1624, 1643, 131 L.Ed.2d 626 (1995) (definition of "commerce"); *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 80, 115 S.Ct. 1223, 1229, 131 L.Ed.2d 94 (1995) (definition of "procedure"); *MCI Telecomms. Corp. v. American Tel. & Tel. Co.*, 512 U.S. 218, 225–26 & n. 2, 114 S.Ct. 2223, 2229 & n. 2, 129 L.Ed.2d 182 (definition of "modify"); *Farmer v. Brennan*, 511 U.S. 825, 854–55, 114 S.Ct. 1970, 1987–88, 128 L.Ed.2d 811 (1994) (definition of "punishment"); *United States v. Granderson*, 511 U.S. 39, 71, 114 S.Ct. 1259, 1276, 127 L.Ed.2d 611 (1994) (definitions of "original" and "sentence"); *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 191, 113 S.Ct. 2549, 2569, 125 L.Ed.2d 128 (1993) (definition of "return"). *See generally* Note, *Looking It Up: Dictionaries and Statutory Interpretation*, 107 Harv. L.Rev. 1437 (1994) (analyzing the Supreme Court's increasing use of dictionaries as aids to statutory interpretation).

**4.** *Cf. Looking It Up*, *supra* note 3, at 1449 n. 86 ("According to John Dewey, the dictionary meanings of words are only 'potential rather than actual until they are linked to other words.'") (quoting John Dewey, *Logic* 349 (1938)).

language of the exclusion is to determine if there is an ambiguity in the context of the specific insurance policy. *See Hartford Accident*, 962 F.2d at 1489 (citing *New Castle County v. Hartford Accident & Indem. Co.*, 933 F.2d 1162, 1194 (3d Cir.1991)).[5] In fact, the Utah Supreme Court directs that in determining whether a provision is ambiguous, the court must "view[ ] the matter fairly and reasonably, in accordance with the usual and natural meaning of the words, and in light of the existing circumstances, including the purpose of the policy." *LDS Hosp.*, 765 P.2d at 858–59 (citation and internal quotation omitted).

The policies at issue were purchased by Redpath as part of its so-called integrated insurance scheme. Redpath already had coverage for its employees under its worker's compensation/employer's liability policies. The Commonwealth policies were intended to cover, among other things, claims against Redpath by anyone other than Redpath employees. To ensure that coverage was not duplicated, the Commonwealth policies were written to exclude claims made by Redpath employees against Redpath that would otherwise be covered by the worker's compensation policies. Thus, it appears that one of the purposes of the exclusion was to avoid duplicative coverage. *Cf. Caribou Four Corners, Inc. v. Truck Ins. Exch.*, 443 F.2d 796, 801 (10th Cir.1971).

■ As *LDS Hospital* makes clear, the purpose of an insurance policy is one key to its interpretation. 765 P.2d at 859. The court recognized that a construction that contradicts the general purpose of the policy or results in a hardship or absurdity will be rejected. *Id.* In addition, the language of an exclusion " 'must be construed so as to give the insurer the protection which he reasonably had a right to expect; and to that end any doubts, ambiguities and uncertainties arising out of the language used in the policy must be resolved in [the insureds] favor.' " *Id.* (citation omitted).[6]

As described above, several courts have considered provisions similar to the exclusions at issue here and have concluded that they were ambiguous. *See. e.g., Transport Indem. Co. v. Wyatt*, 417 So.2d at 571; *Pacific Indem.*, 146 Cal.Rptr. at 651; *United States Steel*, 50 Cal.Rptr. at 584–85. Moreover, given the purposes of the Commonwealth policies—to protect the insured from claims brought by persons other than their own employees and to avoid coverage that duplicated the worker's compensation coverage already available—and the circumstances in which Cyprus was named as an additional insured—to increase rather than decrease its coverage—it cannot be said that the language of the exclusion can be interpreted only to mean that any claim of any employee of any insured against any insured is excluded from coverage.

In addition, the exclusion states that the policy does not cover an injury to any employee "of *any* Insured ... for which *the* Insured or *his* indemnitee may be held liable." The use of both the collective term "any Insured" and the singular (and restrictive) "the Insured," along with the singular pronoun "his," supports a finding that there are at least two reasonable interpretations of the exclusion.[7]

Based on the authorities cited above and the ostensible purpose of the Commonwealth policies, the Court finds that the exclusion is subject to more than one reasonable inter-

**5.** *See also Looking it Up, supra* note 3, at 1449 n. 87 ("Because of the context, words sometimes have a meaning quite different from what might be found in *Webster's* or the *Oxford English Dictionary*. Courts do not and should not 'make a fortress out of the dictionary.' ") (quoting Cass R. Sunstein, *Principles Not Fictions*, 57 U. Chi. L.Rev. 1247, 1247 (1990) (quoting Judge Learned Hand in *Cabell v. Markham*, 148 F.2d 737, 739 (1945))).

**6.** The Court recognizes that the Utah Supreme Court has consistently rejected the reasonable expectations doctrine. *AOK Lands, Inc. v. Shand, Morahan & Co.*, 860 P.2d 924, 927 (Utah

1993); *Alf*, 850 P.2d at 1275; *Allen*, 839 P.2d at 805–07. As the Utah Supreme Court noted in *Allen*, however, an argument that a policy exclusion is ambiguous, while difficult to distinguish from some versions of the reasonable expectations doctrine, falls within the accepted canon of construing ambiguities against the insurer and in favor of the insured. 839 P.2d at 807.

**7.** Commonwealth's interpretation of the exclusion as the only reasonable interpretation would have been stronger (though not entirely persuasive) if it had instead referred to "the Insured" who may be liable as "any Insured."

pretation and is therefore ambiguous. Thus, the exclusion must be construed against the insurer, Commonwealth, and in favor of the insured, Cyprus. *Sandt*, 854 P.2d at 523. Accordingly, the Court concludes that the Commonwealth policies must be construed to provide coverage with respect to the Jones claim. Therefore,

**IT IS ORDERED** that the plaintiff's Motion for Partial Summary Judgment is GRANTED and the defendant's Motion for Summary Judgment is DENIED.