An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-83

NORTH CAROLINA COURT OF APPEALS

Filed:  21 January 2014

NAYLOR CONCRETE CONSTRUCTION CO., INC.,
     Plaintiff

v.

Mecklenburg County
No. 10 CVS 7027

MID-CONTINENT CASUALTY COMPANY,
     Defendant


Appeal by plaintiff from order entered 2 April 2012 by Judge W. Erwin Spainhour in Mecklenburg County Superior Court. Heard in the Court of Appeals 13 August 2013.


*Grimes Teich Anderson, LLP, by Scott M. Anderson and Jessica E. Leaven; Farah & Farah, P.A., by Kevin M. Elwell, for Plaintiff.*

*Yates, McLamb & Weyher, L.L.P., by Rodney E. Pettey and Jennifer D. Maldanado, for Defendant.*


ERVIN, Judge.


Plaintiff Naylor Concrete Construction Company, Inc., appeals from an order entering summary judgment in favor of Defendant Mid-Continent Casualty Company with respect to Plaintiff's claim that Defendant had unlawfully refused to provide coverage for Plaintiff in a tort action brought by an individual employed by CDI Contractors, LLC, one of Plaintiff's

subcontractors, against Plaintiff. On appeal, Plaintiff contends that the trial court erroneously granted summary judgment in Defendant's favor on the grounds that an exclusion obviating the necessity for Defendant to provide coverage for an employee of an insured should not be construed so as to encompass the employee of a subcontractor because (1) the relevant exclusion, which had been drafted by Defendant, was ambiguous and should, for that reason, be construed in such a manner as to afford coverage under the "reasonable expectations" doctrine; (2) an endorsement modifying the exclusion at issue in this case was couched in unduly obscure and technical language and had been unfairly hidden within the policy; and (3), even if the relevant exclusion was not itself ambiguous, that language, when read in conjunction with the policy's severability provision, precluded the entry of summary judgment in Defendant's favor. After careful consideration of Plaintiff's challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

## I. Factual Background

### A. Substantive Facts

On 15 August 2004, CDI entered into an agreement with Dillard's, Inc., for the construction of a retail facility at

Northlake Mall in Charlotte. On 15 September 2004, CDI entered into a subcontract with Plaintiff relating to work to be performed on the Dillard's project. According to the agreement between CDI and Plaintiff, Plaintiff was required to indemnify CDI for any liability arising from work performed in connection with the Dillard's project and to obtain various types of insurance coverage, including workers' compensation and general liability insurance, under which both Plaintiff and CDI would be covered.

In compliance with this and similar contractual obligations, Plaintiff had obtained a policy of commercial general liability insurance from Defendant applicable to the year beginning 1 April 2004, which policy designated Plaintiff as the named insured and, under a blanket endorsement, treated CDI as an additional insured. According to the policy that Plaintiff procured from Defendant, Defendant would provide coverage for bodily injury occurring during the policy period and defend the named insureds in the event that a claim arising from a covered injury was asserted against one or more of them. The policy that Plaintiff procured from Defendant also included a number of exclusions, including an "Employer's Liability" exclusion which provided that no coverage would be afforded for bodily injury claims arising out of employment by "any insured."

On 30 December 2004, Jennifer Marshall, a CDI employee, was working at the construction site when a backhoe operated by one of Plaintiff's employees struck her and pinned her between the wheel of the backhoe and a nearby column. As a proximate result of this accident, Ms. Marshall sustained a number of serious injuries, including four cracked ribs, four pelvic fractures, and a punctured colon. A workers' compensation claim brought by Ms. Marshall against CDI arising from this accident was eventually settled.

On 30 October 2007, CDI instituted an action against Plaintiff pursuant to N.C. Gen. Stat. § 97-10.2 for the purpose of obtaining an award of damages from Plaintiff stemming from the injuries that Ms. Marshall had sustained and the resulting necessity for CDI to provide workers' compensation benefits to Ms. Marshall. On 17 December 2007, Defendant sent a letter to Plaintiff for the purpose of informing Plaintiff that Defendant would not provide Plaintiff with a defense in that action on the grounds that it was investigating the extent, if any, to which CDI's claim was covered under the relevant policy. On 28 December 2007, Ms. Marshall filed a complaint alleging that she was entitled to recover damages from Plaintiff as the result of the injuries that she had sustained because of the negligence of Plaintiff's employee. On 11 February 2008, Defendant sent a

letter to Plaintiff declining to provide Plaintiff with a defense or coverage in either case.

On 6 August 2008, a motion filed by Ms. Marshall seeking leave to intervene in the action brought against Plaintiff by CDI was allowed. On 11 August 2008, Ms. Marshall voluntarily dismissed the action that she had brought against Plaintiff. In an order filed on 3 November 2008, the trial court determined that Ms. Marshall was the real party in interest in the action that had originally been filed against Plaintiff by CDI and that "the caption of [the] action" should reflect that fact in the future. After a bench trial in that case, the trial court entered a judgment on 18 May 2009 awarding Ms. Marshall more than $1,000,000 in damages.

## B. Procedural Facts

On 29 March 2010, Plaintiff filed a complaint seeking a declaration that Defendant should have provided it with coverage and a defense in the action which led to the entry of the 18 May 2009 judgment and the recovery of damages for unfair and deceptive trade practices, a bad faith refusal to provide coverage and a defense, and breach of contract.[1] On 12 October 2011, Defendant filed a motion seeking the entry of summary judgment in its favor on the grounds that, among other things,

---

[1]In its brief, Plaintiff expressly abandoned its bad faith and unfair and deceptive trade practices claims.

Ms. Marshall was "an employee of an additional insured under the Policy and the Employer's Liability Exclusion Endorsement precludes coverage to an employee of any insured." On the same date, Plaintiff filed a motion seeking the entry of summary judgment in its favor. On 2 April 2012, the trial court entered an order granting Defendant's motion for summary judgment, denying Plaintiff's motion for summary judgment, and dismissing Plaintiff's complaint with prejudice. Plaintiff noted an appeal to this Court from the trial court's order.

## II. Legal Analysis

### A. Choice of Law

As an initial matter, we must identify the law which governs the resolution of this case. In its complaint, Plaintiff contended that, although the policy had been issued and delivered in Oklahoma, North Carolina law should be applied for the purpose of resolving the present case on the grounds that the policy in question should be deemed to be a North Carolina contract pursuant to N.C. Gen. Stat. § 58-3-1. On the other hand, Defendant contended in the trial court that this case should be resolved in accordance with Oklahoma law. Although Plaintiff appears to have conceded the correctness of Defendant's position for purposes of the proceedings on appeal, an evaluation of the parties' apparent agreement that Oklahoma

law must be utilized to resolve the present dispute remains appropriate.

"Traditionally, *lex loci* or the law of the place where a contract is made determines matters bearing on the execution, interpretation, and validity of the contract." *Home Indem. Co. v. Hoechst Celanese Corp.*, 128 N.C. App. 113, 119, 493 S.E.2d 806, 810 (1997). According to N.C. Gen. Stat. § 58-3-1:

> All contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein, and all contracts of insurance the applications for which are taken within the State shall be deemed to have been made within this State and are subject to the laws thereof.

Although the provisions of N.C. Gen. Stat. § 58-3-1 apply in the event that "a close connection exists between this State and the interests insured by an insurance policy," "the mere presence of the insured interests in this State at the time of an accident does not constitute a sufficient connection to warrant application of North Carolina law." *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000).

The undisputed information contained in the present record establishes that Defendant is an Oklahoma corporation which is not registered to do business in North Carolina and that the policy in question in this proceeding was both issued and delivered in Oklahoma. For that reason, the only connection

between the policy at issue and this State is the fact that the Dillard's store at which Ms. Marshall was injured is located in North Carolina. According to *Fortune*, such a connection does not suffice to establish that North Carolina law should be applied for the purpose of resolving the dispute between the parties. As a result, given that the traditional "*lex loci*" rule remains applicable in this jurisdiction and that the policy in question in this case was "made" in Oklahoma, we agree with the parties that we are required to apply Oklahoma law in determining whether the trial court erred by granting summary judgment in favor of Defendant.

## B. Standard of Review

Although, as we have already noted, we must apply the substantive law of Oklahoma, we are required to follow our own procedural rules in resolving the dispute between the parties. *See Harco Nat'l Ins. Co. v. Grant Thornton, LLP*, 206 N.C. App. 687, 690, 698 S.E.2d 719, 722 (2010) (quoting *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988)) (stating that "[o]ur traditional conflict of laws rule is that matters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum"), *disc. review denied*, 365 N.C. 77, 706 S.E.2d

235 (2011). As a result, the applicable standard of review in this case is the one dictated by North Carolina, rather than Oklahoma, law.

"Orders of summary judgment are reviewed *de novo* by this Court and the evidence is reviewed in the light most favorable to the non-moving party." *Integon Nat'l Ins. Co. v. VillaFranco*, __ N.C. App. __, __, 745 S.E.2d 922, 925 (2013). As a result, an order granting summary judgment in favor of a particular party will be upheld when, viewed in the light most favorable to the non-movant, "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact" and that the prevailing party "is entitled to a judgment as a matter of law." *Lunsford v. Renn*, 207 N.C. App. 298, 303-04, 700 S.E.2d 94, 97 (2010) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)), *disc. review denied*, 365 N.C. 193, 707 S.E.2d 244 (2011). We will now utilize this standard of review in order to determine whether the trial court correctly granted summary judgment in Defendant's favor.

## C. Employer's Liability Provision

In its initial challenge to the trial court's order, Plaintiff contends that, in accordance with Oklahoma's "reasonable expectations" doctrine, the employer's liability

exclusion must be construed in such a manner as to give effect to the parties' expectations, which were, according to Plaintiff, that the exclusion in question would only apply to claims for which the named insured's workers' compensation coverage was available. In Plaintiff's view, given that Ms. Marshall was employed by CDI and given that Ms. Marshall's injuries would not be covered by Plaintiff's workers' compensation insurance, the exclusion upon which Defendant relies did not operate to bar Plaintiff's request for coverage. We do not find Plaintiff's contention persuasive.

The "reasonable expectations" doctrine was adopted in Oklahoma in *Max True Plastering Company v. United States Fidelity and Guaranty Company*, 912 P.2d 861 (Okla. 1996). "Under the reasonable expectations doctrine, the objectively reasonable expectations of applicants, insureds and intended beneficiaries concerning the terms of insurance contracts are honored even though painstaking study of the policy provisions might have negated those expectations." *Max True Plastering Co.*, 912 P.2d at 862-63. As a result, under the "reasonable expectations" doctrine, "if the insurer or its agent creates a reasonable expectation of coverage in the insured which is not supported by policy language, the expectation will prevail over the language of the policy." *Id.* at 864. On the other hand,

the doctrine upon which Plaintiff relies is subject to reasonable limits given that, "[i]f the doctrine is not put in the proper perspective, insureds could develop a 'reasonable expectation' that every loss will be covered by their policy and courts would find themselves engaging in wholesale rewriting of insurance policies." *Id.* at 868. For that reason, the "reasonable expectations" doctrine only applies "to cases in which policy language is ambiguous and to situations where, although clear, the policy contains exclusions masked by technical or obscure language or hidden exclusions." *Id.* at 870.

## 1. Clarity of Policy Language

The first issue which we must address in order to determine the applicability of the "reasonable expectations" doctrine is whether the relevant policy provision is ambiguous. "It is settled under Oklahoma's extant jurisprudence that ascertaining whether the terms of an insurance policy are ambiguous is for the Court to determine as a matter of law." *Bituminous Cas. Corp. v. Cowen Constr. Inc.*, 55 P.3d 1030, 1033 (Okla. 2002). A careful examination of the relevant provisions of the policy which Plaintiff procured from Defendant establishes that the exclusion upon which Defendant relies is not ambiguous.

The exclusion at issue in this case provides that:

This insurance does not apply to:

. . . .

"Bodily Injury" to:

(1) An "employee" of any Insured arising out of and in the course of:
  (a) Employment by any insured; or

  (b) Performing duties related to the conduct of the insured's business; or

. . . .

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity;

. . . .

(3) To liability assumed by any insured under an "Insured contract"

According to the definitional provisions contained in the policy, the term "insured" includes "any person or organization qualifying as such under" the provision entitled "Who is An Insured." As a result, according to an endorsement in the policy, the class of "insureds" included "[a]ny person or organization for whom the named Insured has agreed by written 'insured contract' to designate as an additional insured subject to all provisions and limitations of this policy." In view of the fact that the term "insured contract" is defined, in pertinent part, in the policy as "[t]hat part of any other

contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization" and the fact that Plaintiff had agreed to indemnify CDI from any loss which CDI sustained as a result of Plaintiff's conduct, CDI was an additional insured for purposes of the insurance policy that Plaintiff had purchased from Defendant. As a result, according to Defendant, the relevant exclusion unambiguously precludes a finding of coverage in this instance because Ms. Marshall, as an employee of CDI, was employed by and injured in the course and scope of her employment with "any insured."

According to Plaintiff, on the other hand, the language in which the relevant exclusion is couched is ambiguous because the result reached by analyzing the policy language in a literal manner is contrary to the established purposes of and intentions underlying similar exclusions on the grounds that such a literal reading of the exclusion in question would unfairly leave Plaintiff devoid of coverage in a situation which commonly exists in the construction industry. Although Plaintiff's arguments have equitable appeal, we are unable to square them with the fact that the reference to "any insured," which is the

operative policy language for purposes of our present inquiry, is clear and unambiguous.

As all of the parties to this case acknowledge, an insurance policy is a contract. According to well-established Oklahoma law, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." 15 Okla. Stat. § 154. Moreover, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article." 15 Okla. Stat. § 155. Finally, "[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." 15 Okla. Stat. § 163. As a result, during the contract construction process:

> [a] contract must be considered as a whole so as to give effect to all its provisions without narrowly concentrating upon some clause or language taken out of context. The language in a contract is given its plain and ordinary meaning unless some technical term is used in a manner meant to convey a specific technical concept. The court must interpret a contract so as to give effect to the intent of the parties at the time the contract was formed.

*Mercury Inv. Co. v. F. W. Woolworth Co.*, 706 P.2d 523, 529 (Okla. 1985) (footnotes omitted) (citing 15 Okla. Stat. §§ 152, 157 and 160 (1985)). However, "[w]hen [the] terms [in which a

contract is couched] are unambiguous and clear, the employed language is accorded its ordinary, plain meaning and enforced so as to carry out the parties' intentions." *Bituminous Cas. Corp.*, 55 P.3d at 1033. In view of the fact that the parties do not dispute that CDI was an "insured" as that term is used in the relevant policy provision and that "any" is neither a defined nor a "technical term . . . used in a manner meant to convey a specific technical concept," the term "any" must be "given its plain and ordinary meaning," during the process which we utilize in determining whether the expression in question is ambiguous. *Mercury Inv. Co.*, 706 P.2d at 529.

Although "[a] contract term is ambiguous if it can be interpreted as having two different meanings," *Equity Ins. Co. v. City of Jenks*, 184 P.3d 541, 544 (Okla. 2008), the alternative meanings upon which a finding of ambiguity must necessarily rest must arise from the relevant contractual language rather than from some other source. For that reason,

> the practical construction of an agreement, as evidenced by the acts and conduct of the parties, is available only in the event of an ambiguity. But where a contract is complete in itself and, as viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended. The intention of the parties cannot be determined from the surrounding circumstances, but must be gathered from a four-corners' examination of the contractual instrument in question.

*Mercury Inv. Co.*, 706 P.2d at 529 (emphasis omitted). This fundamental principle is illustrated in *Bituminous Casualty Corporation*, in which patients at a hospital contracted lead poisoning from what appeared to be the negligent construction of a dialysis center. The insurance policy at issue in that case excluded claims for "[b]odily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants," with pollutants being defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Bituminous Cas. Corp.*, 55 P.3d at 1031 n.1. Although the insured argued that the policy provision was intended to exclude purely environmental pollutants, a category which did not include lead, the Oklahoma Supreme Court rejected this assertion, holding that:

> Nowhere in the policy's lexicon is there language employed which would sustain finding-as suggested by the insured-the pollution exclusion clause only excluded from coverage that bodily injury and/or property damage which occurred when the general "environment" was damaged by the insured's acts. An insured cannot insist upon a strained construction of relevant policy language in order to claim a patent ambiguity exists nor can it contradict the written instrument's plain terms under the guise of a latent ambiguity.

*Id.* at 1034. As a result, in order to establish that an ambiguity sufficient to invoke the "reasonable expectations" doctrine exists in this instance, the plain language of the relevant policy provision must be susceptible to at least two reasonable interpretations.

A careful analysis of the relevant policy language shows that the expression "any insured" is clear and unambiguous. As an initial matter, the word "any," when read in context, means "every." *Webster's New World College Dictionary* 64 (4th ed. 2006). In addition, given that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others," 15 Okla. Stat. § 157; *see also Mercury Inv. Co.*, 706 P.2d at 529, we note that the policy in question has both an employer liability exclusion and a separate exclusion applicable to situations in which workers' compensation coverage is available, a fact which severely undercuts Plaintiff's suggestion that the employer exclusion was only intended to operate in instances in which the named insured's workers' compensation coverage had been implicated. Even within the employer liability exclusion, the policy specifically states that the exclusion applies "[w]hether the insured may be liable as an employer or in any other capacity," a fact which indicates

that the relevant policy provision should be read broadly to apply to a wide variety of situations, including instances such as those before us in this case. As a result, we believe that the clear and unambiguous language of the employer liability exclusion demonstrates that Defendant was not obligated to provide coverage in any situation, regardless of its nature, in which the injured party was employed by a named insured.

The appellate courts in Oklahoma have, on at least one prior occasion, evaluated the meaning of "any insured." In *BP America, Inc. v. State Auto Property & Casualty Insurance Company*, 148 P.3d 832 (2005), the Oklahoma Supreme Court considered a case in which the plaintiff, which had entered into a construction contract with Rowland Construction, Inc., purchased general liability and automobile liability policies under which Rowland was designated as the named insured and the plaintiff was listed as an additional insured. After an employee of Rowland was involved in a motor vehicle accident in which several non-employee third parties were injured or killed, the plaintiff sought to obtain a judgment ordering the defendant to provide coverage under the general liability policy. 148 P.3d at 833-35. In response to the plaintiff's claim, the defendant argued that it was not obligated to provide coverage on the grounds that the relevant language in the general

liability policy excluded coverage in the event that the injury for which recovery was sought stemmed from the operation of a motor vehicle by "any insured." *Id.* at 836. On appeal, the Oklahoma Supreme Court considered whether the "term 'any insured' in an 'Auto Exclusion' clause of a commercial general liability policy exclude[d] from coverage all automobile occurrences attributable to any of the insureds," *id.* at 833; determined that the term "any insured" was unambiguous and "that to rule otherwise would require [the court] to ignore the clear language of an exclusion and expand the policy terms well beyond the parties' reasonable expectations," *id.* at 838-39; and held that "adopting the position advanced by the insured would require that [the court] unilaterally convert a general liability policy-without motor vehicle coverage-into a [sic] automotive liability policy." *Id.* at 839.

Although Defendant argues that *BP America* controls the outcome of that case, we are not prepared to take such an expansive view of the decision in question. Instead, as Plaintiff suggests, *BP America* is distinguishable from the present case in a number of respects. First, the question certified to the Oklahoma Supreme Court in *BP America* revolved around the proper interpretation of an automobile exclusion contained in a general liability policy rather than an employer

liability exclusion contained in a commercial liability policy. Secondly, the injured party in *BP America*, unlike the injured party in this case, had no relationship to either of the named insureds. Finally, the plaintiff in *BP America* argued that the term "any" should be interpreted to mean "the" instead of "all," *id.* at 836, while Plaintiff, in addition to acknowledging that "any" means any, simply argues that, given the absence of qualifying language, "any" is open to two reasonable interpretations in light of the purpose underlying the relevant exclusion and should, for that reason, be deemed ambiguous. As a result, given that the exact issue before us in this case was not before the Oklahoma Supreme Court in *BP America*, we are unable to conclude that *BP America* absolutely controls the outcome in this case. On the other hand, the approach taken by the Oklahoma Supreme Court in *BP America* is consistent with the approach that we have deemed appropriate in this case and provides an obvious indication that the result that we have reached in this case is consistent with the manner in which the Oklahoma courts would resolve the present issue in the event that it was presented to them for determination. *See also All American Ins. Co. v. Burns*, 971 F.2d 438, 445 (10th Cir. 1992) (first omission in original) (holding that, under Oklahoma law, a provision contained in a comprehensive liability policy issued

to a religious organization excluding coverage for "personal injury [claims] arising out of the willful violation of a penal statute . . . committed by or with the knowledge . . . of *any insured*" was "clear and unambiguous"), and *Farmers Ins. Co. v McClain*, 603 F.2d 821, 823 (10th Cir. 1979) (holding that, under Oklahoma law, a household exclusion contained in an automobile liability policy providing that coverage was not available for "the liability of *any* insured for bodily injury to (a) any member of the same household of such insured except servants, or (b) the *Named* insured," was clear and unambiguous" and "was clearly intended to be applicable to permissive users as well as the named insured").[2]

In seeking to persuade us that the relevant policy provision is ambiguous, Plaintiff also directs our attention to a number of decisions from other jurisdictions. Although Plaintiff acknowledges, as Defendant demonstrates in its brief, that there are other decisions from across the country which find similar policy language to be clear and unambiguous, Plaintiff asserts that we should find the decisions upon which

---

[2]At one point in its brief, Plaintiff also appears to suggest that we should disregard *BP America* on the grounds that it was wrongly decided. However, given that our role in this case is limited to attempting to determine how the Oklahoma courts would decide the issue which is before us in this case, it would be inappropriate for us to evaluate the extent, if any, to which we believe that the *BP America* court should have reached a different result.

it relies to be persuasive for purposes of resolving the issue which has been presented for our decision in this case. A careful examination of each of the decisions upon which Plaintiff relies establishes that all of them are distinguishable from this case in ways that we find to be material.

Although the United States District Court for the District of Utah held in *Cyprus Plateau Mining Corporation v. Commonwealth Insurance Company*, 972 F. Supp. 1379, 1382 (D. Utah 1997), that an exclusion providing that the "Policy [did] not cover Personal Injury including Bodily Injury to any employee of any Insured under [the] policy for which the Insured or his indemnitee may be held liable," would, when read literally, exclude coverage in a situation similar to this one, the Court still found the relevant policy language to be ambiguous, stating that:

> given the purposes of the Commonwealth policies-to protect the insured from claims brought by persons other than their own employees and to avoid coverage that duplicated the worker's compensation coverage already available-and the circumstances in which Cyprus was named as an additional insured-to increase rather than decrease its coverage-it cannot be said that the language of the exclusion can be interpreted only to mean that any claim of any employee of any insured against any insured is excluded from coverage.

972 F. Supp. at 1385. In light of the fact that the policy at issue in *Cyprus Plateau*, unlike the policy at issue here, included a reference to "the Insured" in addition to the reference to "any insured" and the fact that the *Cypress Plateau* Court appears to have based its decision on the perceived intent of the parties rather than the language in which the policy in question is couched, we do not believe that the logic employed and result reached in *Cyprus Plateau* is consistent with the result which would be reached in this case by an Oklahoma court.

Similarly, in *Transport Indemnity Company v. Wyatt*, 417 So. 2d 568, 570 (Ala. 1982), the Alabama Supreme Court held that an exclusion contained in a corporate liability policy excluding "any OCCURRENCE which caused BODILY INJURY to any employee of any INSURED arising out of or in the course of his employment by any INSURED" was ambiguous on the grounds that "[t]he wording could be interpreted to mean either only singularly 'any one of the insureds' or could apply "collectively to the whole group of insureds." However, the Court failed to explain, based on an analysis of the relevant policy language, why this ambiguity existed. Although the claims that were asserted against the insureds involved in *Wyatt* might have been covered by workers' compensation, the policy in question does not appear to have contained any language like that found in the policy at issue

here specifically providing that the exclusion applied regardless of the capacity in which the insured was held liable. As a result, we do not believe that *Wyatt* reflects the result that would be reached by the Oklahoma courts in the event that they were called upon to construe the policy language at issue here.

Finally, in *Pacific Indemnity Company v. Transport Indemnity Company*, the California Court of Appeals examined an automobile liability "'policy [that did] not apply to any liability for bodily injury, . . . of *any employee of any Insured* arising out of and in the course of his employment by any Insured'" and held, in reliance upon its decision in *Pleasant Valley Lima Bean Growers Ass'n v. Cal-Farm Ins. Co.*, 142 Cal App. 2d 126, 133-34, 298 P.2d 109, 113-14 (1956), that the reference to "any insured" was ambiguous on the grounds that:

> [t]he phrase "any employee of any insured" is susceptible to two interpretations: it could mean any employee of any insured who is seeking protection under the policy or it could mean any employee of any insured under the contract, whether or not that insured is seeking protection under the policy. It is unnecessary to show which interpretation is more logical.

81 Cal. App. 3d 649, 653, 656, 146 Cal. Rptr. 648, 649, 651 (1978) (omissions in the original). Aside from the fact that

the *Pacific Indemnity* Court simply asserted, rather than demonstrated, that the relevant policy language was susceptible to both of the interpretations set out in its opinion, nothing in *Pacific Indemnity* suggests that the additional factors upon which we have relied in determining that the policy language at issue here was not ambiguous, such as the separate exclusion for situations involving workers' compensation coverage and the language providing that the exclusion applied regardless of the capacity in which the insured was held liable, were present in that case. As a result, we do not believe that the result reached in *Pacific Indemnity* reflects the approach that would be adopted by the Oklahoma courts in the event that they were called upon to decide the present case.[3]

A careful examination of the arguments advanced in opposition to the result reached in the trial court's order indicates that Plaintiff would have this Court focus on the perceived general purposes underlying the inclusion of employer exclusions in insurance policies, the inequities that would allegedly result from the adoption of the position reflected in

---

[3]The same factors persuade us that the logic adopted by the California Court of Appeals in *United States Steel Corporation v. Transport Indemnity Company*, 241 Cal. App. 2d 461, 474, 50 Cal. Rptr. 576, 384-85 (1966), is not reflective of the approach which would be adopted in this case in the event that the Oklahoma courts were to address the issues before us in this case in light of the law applicable in that jurisdiction.

the trial court's order, and other general policy considerations in order to ascertain whether the relevant policy provision is ambiguous rather than upon an examination of the actual policy language. Put another way, Plaintiff's argument rests, for the most part, upon a number of equitable or policy-based justifications for interpreting the reference to "any insured" in the relevant policy in such a manner as to trigger the application of the "reasonable expectations" doctrine rather than advancing an analysis of the literal language of the employer exclusion that demonstrates the existence of an ambiguity in the relevant policy language.[4] For that reason, the approach which Plaintiff would apparently have us adopt suffers from the deficiency that it relies, contrary to controlling Oklahoma law, upon factors other than the plain meaning of the relevant policy provision to establish the necessary "ambiguity." As a result, given that Plaintiff has failed to offer any textual support for a determination that the term "any insured" is ambiguous and given that our reading of the language

---

[4]Plaintiff does contend that the fact that the exclusion in question is titled "Employer's Liability" rather than "Employers' Liability" creates the ambiguity necessary to trigger application of the "reasonable expectations" doctrine. However, we are unable to see why the use of a singular heading should negate the unambiguous language which appears in the text of the relevant policy provision given that this exclusion would be applicable to each insured as well as to the insured collectively.

of the employer liability exclusion indicates that no such ambiguity exists, we conclude that Plaintiff's initial challenge to the trial court's order lacks merit.

## 2. Obscurity of Endorsement

As we have already noted, the "reasonable expectations" doctrine may apply "to cases in which . . ., although clear, the policy contains exclusions masked by technical or obscure language or hidden exclusions." *Max True Plastering Co.*, 912 P.2d at 870. According to Plaintiff, the modified version of the employer liability exclusion contained in the commercial general liability policy at issue here was adopted by means of a modification to the relevant policy "buried on page 53 of the endorsements that follow the Policy" that changed the prior reference to "the insured" to "any insured."[5] In light of these facts, Plaintiff contends that, even if the language of the employer exclusion is clear and unambiguous, we should construe the relevant policy language in a manner favorable to Plaintiff given that the language in question was both "technical or

---

[5]Aside from the arguments advanced in the text, Plaintiff advances other contentions in support of its "hidden endorsement" assertion. In view of the fact that these additional arguments rely on the allegedly ambiguous nature of the employer exclusion and the fact that we have already determined that the relevant policy language is clear and unambiguous, we need not address this aspect of Plaintiff's "hidden endorsement" argument any further.

obscure" and "hidden." We do not find Plaintiff's argument persuasive.

According to the undisputed record evidence, the policy that Plaintiff had procured from Defendant had been renewed on multiple occasions. In view of the length of time that had passed since the date upon which the policy was initially issued, a number of endorsements had been issued for the purpose of modifying the original policy language, including the language in which the employer liability endorsement was couched. The sixth page of the policy includes a list of endorsements and a specification of the states to which each endorsement applies. The endorsement at issue here, ML 1276, is included in this list and states, at the very top of the relevant page on which it appears, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." As a result of the fact that each endorsement was set forth on a separate page, the fact that the presence of the master list facilitated the policyholder's ability to identify each endorsement, and the fact that the endorsement heading was set out in capital letters, the manner in which the endorsement in question was implemented and couched more than sufficed to put Plaintiff on notice that the policy had been changed. Although Plaintiff argues that other approaches that Defendant might have taken

would have been clearer, that fact, standing alone, does not suffice to establish that Defendant "hid" the change to the employer liability exclusion worked by the endorsement in question. In addition, the language in which the modified version of the employer exclusion is couched does not, at least to us, appear to be technical or obscure. In spite of Plaintiff's argument to the contrary, we are unable to see how the expression "any insured" can be deemed to fall into the category of "technical or obscure" expressions. Unless we were to hold that any and all endorsements triggered the operation of the "reasonable expectations" doctrine, a result that would clearly conflict with Oklahoma law, we cannot conclude that the endorsement at issue here was couched in "obscure and technical" language or "hidden" from Plaintiff. As a result, we conclude that the endorsement at issue here was not such as to authorize the use of the "reasonable expectations" doctrine to interpret the employer liability exclusion in the manner contended for by Plaintiff.

## D. Severability Provision

Finally, Plaintiff argues that, even if the language in which the employer exclusion is couched is clear and unambiguous and even if the modified version of the employer liability exclusion set out in the relevant endorsement was neither

"hidden" nor couched in "obscure and technical" language, the severability clause contained in the policy that Plaintiff procured from Defendant created a sufficient ambiguity to permit us to construe the policy in a manner favorable to Plaintiff. More specifically, Plaintiff contends that, given that the employer liability exclusion excludes claims asserted by "any" employee arising out of the claimant's employment with "any" insured and given that, in light of the language in which the severability clause is couched, Plaintiff should be viewed as the only insured for purposes of applying the language of the employer exclusion, it is, for that reason, entitled to receive coverage under the policy in question. Plaintiff's argument lacks merit.

The severability provision upon which Plaintiff's argument rests provides that:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> a.   As if each Named Insured were the only Named Insured; and
>
> b.   Separately to each insured against whom claim is made or "suit" is brought.

According to Plaintiff, the language of the severability clause indicates that the policy in question applies separately to each

insured, thereby precluding an interpretation of the employer exclusion which treats multiple entities as "insureds." Although this argument has surface appeal, it was specifically rejected in *BP America*, in which the Oklahoma Supreme Court addressed the issue of whether the existence of an auto exclusion and a separation of insureds clause identical to the one at issue here rendered the policy in question ambiguous for purposes of Oklahoma law. *BP America*, 148 P.3d at 833. In considering the merits of an argument indistinguishable from that advanced by Plaintiff in this case, the court concluded that the "purpose of severability is not to negate plainly worded exclusions" and that "exclusions are read separately and operate independently from the general declaration identifying events which will not be covered." *Id.* at 841-42 (emphasis omitted). Although Plaintiff attempts to distinguish *BP America* on the grounds that it involved an automobile exclusion rather than an employer exclusion, we note that *BP America* and this case both involved general liability policies, addressed identical issues and policy language, and used language of considerable breadth. For that reason, even though *BP America* may not absolutely control the resolution of the issue that is before us, it does provide considerable light on the manner in which the Oklahoma courts have viewed issues similar to the one

before us in this case.   Moreover, the *BP America* Court clearly declined to follow the decisions in *United States Fidelity and Guaranty Company v. Globe Indemnity Company*, 60 Ill. 2d 295, 299, 327 N.E.2d 321, 323 (1975) (holding that a severability provision provided coverage to an additional insured for injuries suffered by an individual employed by a named insured despite the presence of an employer liability exclusion), and *Atchison, Topeka and Santa Fe Railway Company v. St. Paul Surplus Lines Insurance Company*, 328 Ill. App. 3d 711, 716, 767 N.E.2d 827, 831 (2002) (holding, in reliance upon *U.S. Fid. & Guar. Co.*, that "the separation clause contained in the St. Paul policy provide[d] separate coverage" for each insured "as if each was separately insured with a distinct policy"), and implicitly rejected the logic of the decisions in *Cook v. Country Mutual Insurance Company*, 126 Ill. App. 3d 446, 447-48, 466 N.E.2d 587, 588 (1984) (reversing, in reliance upon *U.S. Fid. & Guar.*, a trial court determination that an employer liability exclusion obviated the defendant from providing coverage given the presence of a severability clause), and *Shelby Realty LLC v. National Surety Corporation*, 2007 U.S. Dist. Lexis 29482 *10 (S.D.N.Y. 2007) (holding that "the Employee Exclusion, read in conjunction with the Separation of Insureds Clause, does not relieve National of its obligation to

indemnify Shelby for the Personal Injury Action"),[6] on the theory that "most courts addressing the issue of whether a severability clause will render a clear and unambiguous exclusionary provision doubtful determine that the clear language of the exclusion must prevail."[7]   148 P.3d at 841.   As a result, the language of the severability clause contained in the policy that Plaintiff purchased from Defendant does not suffice to support a determination that the employer exclusion is ambiguous and subject to interpretation in Plaintiff's favor on the basis of the "reasonable expectations" doctrine.

## III. Conclusion

For the reasons set forth above, we conclude that none of Plaintiff's challenges to the trial court's order have merit and that the trial court did not err by granting summary judgment in Defendant's favor.   Although a number of policy-oriented

---

[6]A number of courts have criticized *Shelby Realty*, stating that it does not "accurately reflect[] the current state of the case law in New York," *Richner Development, LLC v. Burlington Insurance Company*, 2009 N.Y. Misc. Lexis 5221 *8 (N.Y. Sup. Ct. 2009), *aff'd* 81 App. Div. 3d 705, 916 N.Y.S. 2d 211 (2011), and that it represents a minority position. *Nautilus Ins. Co. v. K. Smith Builders, Ltd.*, 725 F. Supp. 2d 1219, 1229 (D. Haw. 2010).

[7]We also note that the employer liability exclusion at issue in two of the three cases upon which Plaintiff relies references a "protected person," *Atchison, Topeka and Santa Fe Railway Company*, 328 Ill. App. 3d at 713, 767 N.E.2d at 828, or "an insured," *Cook*, 126 Ill. App. 3d at 446, 466 N.E.2d at 587, rather than "any insured," a fact that renders these decisions distinguishable on policy language grounds as well as inconsistent with *BP America*.

objections can be advanced in opposition to the result that we believe to be required under Oklahoma law, we are compelled by the applicable Oklahoma decisions to focus upon the language of the policy rather than upon the broader considerations upon which Plaintiff urges us to rely. As a result, given that the language of the employer exclusion is clear and unambiguous when applied to the present set of facts, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judges McGEE and STEELMAN concur.

Report per Rule 30(e).